Argued September 11, affirmed October 14, 1964

# STATE OF OREGON *v.* MURRAY

395 P. 2d 780

*J. Raymond Carskadon,* Portland, argued the cause and submitted the brief for appellant.

*George Van Hoomissen,* District Attorney of Multnomah County, Portland, argued the cause and submitted the brief for respondent.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Lusk, Justices.

ROSSMAN, J.

This is an appeal by the defendant, Charles William Murray, from a judgment of the circuit court which found him guilty of the crime of Burglary in a Dwelling (ORS 164.230) and imposed a sentence. The entry of the judgment was preceded by the return of a verdict of guilty. The state contends that the crime was committed January 7, 1963, and that it took place in the residence of Mr. and Mrs. Robert Maloy in Portland. The defendant, as appellant, presents nine assignments of error.

In 1950 the defendant and one Harley A. Johnson became acquainted while each was incarcerated in the Oregon Penitentiary. In December 1961, after the terms of each had expired, they met again. About that time Johnson had heard that in the residence of Mr. and Mrs. Maloy there was a safe which generally held a large sum of money. The Maloy home had no close-by neighbors. According to the defendant appellant's brief, the two men "started to plan a burglary of the Maloy residence." The defendant testified:

> "Q Now you testified that Johnson approached you in January of 1962, and I believe I quote you correctly, you told Johnson you were interested in the Maloy job. Is that correct?
>
> "A That is correct, yes, sir.

"Q And then you testified that on a number of occasions you and Johnson went out to the Maloy property. Is that correct?

"A That is correct, sir.

"Q And you intended at that time to see whether or not it was possible to burglarize the residence, is that correct?

"A That is correct, sir.

"Q You discussed the matter with Johnson on a number of occasions?

"A Yes, sir.

"Q You bought tools, which were to be used in the burglary, is that correct?

"A We bought tools, yes.

"Q What was the purpose of buying the tools?

"A Well, just in case we needed them.

"Q What would you need them for in a burglary?

"A Well, I don't know what you would need it for unless it was a burglary.

"Q What I am saying is, you bought the tools to be used in a burglary of the Maloy place, is that correct, later on?

"A Yes, yes, yes.

"Q And those tools could be used to gain entry, could they not, if necessary?

"A Yes.

"Q And they could be used to crack open a safe, is that correct?

"A Well,—

"Q If it is the right type of thing?

"A If it is the right type of thing, yes.

\* \* \*

"Q And you also concede that on the night of this burglary, you went out to the Maloy property, on January 7, 1963?

"A Yes, yes, I was out there.

"Q And you went out with Johnson?

"A Yes, sir.

"Q In his car?

"A In his car.

"Q Now you have seen this exhibit, State's Exhibit 3?

"A I have.

"Q You are familiar with it. Am I correct, you, and Johnson, and Peterson, approached this Maloy property from Clackamas County, from the golf course?

"A Yes, yes.

"Q The three of you together?

"A Yes.

"Q Did you see Detective Wold down there in the bushes?

"A Oh, no, no.

"Q And as I understand it further, both you and Peterson went up onto the patio, is that correct?

"A That is correct.

"Q And that Johnson stayed in back here (pointing) on the golf course?

"A Yes. In that vicinity, yes.

"Q And it is your testimony, I believe you already said, that Johnson, at no time, entered the house?

"A Not that I know of; not while I was there.

"Q You and Peterson tried these two doors?

"A Knocked.

"Q What did you say?

"A We just knocked at those doors.

"Q Both doors?

"A Both doors."

The evidence indicates that by January 7, 1963, Johnson and the defendant Murray were joined by one Floyd K. Peterson.

The state presented evidence which showed that police officers had received an intimation that the defendant and Johnson were planning a burglary of the Maloy residence. According to the state, in the late afternoons of the four or five days prior to January 7, 1963, police officers followed the defendant and Johnson as the two drove to the Maloy property. They took note of the actions of those two men when they had reached that place. January 7, 1963, the entire Maloy family had gone to some entertainment in the early evening and did not return to the residence until 9:30 p.m. In the meantime police officers concealed themselves in the shrubbery and in the garage of the Maloy property. The defendant, as we have seen, concedes that upon that evening he, Johnson, and Peterson went to the property. The defendant claims that as the day for the burglary drew nearer he told Johnson that "he was giving up this burglary attempt." He also contends that after he knocked on the doors he started for home. But his brief, as his testimony, states:

> "On the night of January 7, 1963, Murray, Johnson and Peterson went to the Maloy home without tools. Murray and Peterson went to the house and knocked with no response, then walked away from the house to a distance that was about twenty feet from where Johnson was standing. Peterson was going back to the Maloy home, but Murray told Johnson he was leaving. * * *"

When the officers entered the home they found Peterson in it. Since the officers had noticed flashlights simultaneously in the second floor and in the

basement, the state argues that more than one of the trio was in the house. The state claims that the defendant and Peterson were then in the residence and that it was their two flashlights that the officers observed.

The first assignment of error is based upon the receipt in evidence of a map, showing the Maloy property and the surrounding area; it became identified as Exhibit No. 3. A drawing known as Exhibit No. 1 and prepared by the County Assessor likewise depicts not only the Maloy property but also contiguous blocks and their streets. When the defendant made objection to Exhibit No. 1, the court limited the reception of the map to that part only which shows the Maloy property. The defendant claims that there are two discrepancies between the map and the drawing. The two plats were not made in the same year. That fact was developed before the jury; it also heard the evidence which pointed out the physical changes that were made in the interval. When the defendant sought to develop the discrepancies, the witnesses referred to the one or the other of the two documents by such terms as "here," "there," or by "pointing." We cannot determine with assurance the spots that they had in mind. This case was not concerned with any title issue nor with a contract to convey the property to a buyer together wtih all features shown in the drawings. The purpose of the drawing, like that of the map, was to assist the witnesses in pointing out to the jury the places where the officers had concealed themselves or where they observed the defendant and his two co-indictees as they entered upon the property or moved about. Mathematical accuracy and completeness were not essentials to those purposes. We are aware of no prejudice that the defendant sustained by reason of

the variances, if in fact the two exhibits are at variance with each other. Whatever the nature of the variance may be, it did not hamper the witnesses in portraying the facts to which they gave testimony. If the trial judge committed any error, this would not in itself suffice. Error, even in a criminal case, in order to demand reversal, must be prejudicial. Wigmore on Evidence, 3rd ed., § 21; *State v. Lanegan,* 192 Or 691, 236 P2d 438; *State v. Folkes,* 174 Or 568, 150 P2d 17; *State v. Boloff,* 138 Or 568, 4 P2d 326, 7 P2d 775. See also ORS 138.230.

■ We will now consider the second and third assignments of error simultaneously. The second is based upon a ruling which denied a motion made by the defendant for a mistrial after the trial judge had received in evidence a hatchet which was found on the kitchen floor of the Maloy home by Mrs. Maloy while the police officers were still present. The third assignment of error challenges a ruling that held the hatchet was admissible in evidence. The evidence indicates that the hatchet did not belong to the Maloy family.

The basis for the contention upon which these two assignments of error are predicated is stated as follows in the second assignment of error:

"On the basis that this exhibit counsel is showing this witness, was introduced in the preliminary hearing at 2nd and Oak, and at that time it was suppressed as evidence in this cause."

By the term "2nd and Oak" defendant's counsel referred to the Municipal Court of Portland. His overall reference was to the preliminary hearing that occurred after the defendant's apprehension by the police. Following the use by counsel of the quoted words, the trial judge stated:

"I have no way of knowing what happened in

the previous hearing, but if this is something that this lady found when she returned to her house, she certainly may identify it."

No judicial record was offered showing that the hatchet had been "suppressed" by any court; and we are aware of no reason for believing that it should have been. It would be a novelty if the Municipal Court in the conduct of a preliminary hearing could make a ruling excluding an object from subsequent judicial use in other courts and which could be invoked like the taboo of the Polynesians by the mere utterance of the word taboo. It is not claimed that the defendant was prejudiced in any manner whatever by the production of the hatchet or its receipt in evidence. We dismiss these two assignments of error as lacking in merit.

The fourth assignment of error is based upon a ruling which denied another motion made by the defendant for a mistrial. The motion, which the defendant adopts as this assignment of error, reads as follows:

"It is incompetent, irrelevant and immaterial. It has no bearing on this. He is back in 1947. Certainly that has nothing to bear with this case. Furthermore, it is just one way to bring out information to this jury which he can't do, and at this time I move for a mistrial, based on the District Attorney's question."

The witness then under examination was the defendant Murray. The trial judge sustained the objection with reference to a part which he described as "he was in and out of prison"; otherwise, the motion for a mistrial was denied. No question was pending and unanswered when the objection was made. No motion was offered to strike anything that the defendant Murray had said.

■ An order which denies a motion for a new trial will not be reversed on appeal unless it appears that the ruling was an abuse of discretion. *Johnson v. Hansen,* 237 Or 1, 389 P2d 330, 390 P2d 611; *State v. Hedrick,* 233 Or 139, 377 P2d 323. We have read the entire transcript of the evidence consisting of 430 pages and have examined particularly the part to which the above ruling relates. We are aware of no basis for saying that an abuse of discretion occurred.

The fifth assignment of error is phrased in these words: "The Court erred in not instructing on entrapment and the officer's duty to prevent a crime."

■ The defendant requested no instruction upon entrapment or the duty of a police officer. Normally, it is not incumbent upon the trial judge to instruct upon a phase of the law which has not been the subject of a request. The defendant and his co-indictees planned this crime upon their own initiative. The officers, after discovering that plans were under way to burglarize the Maloy residence, lent no encouragement. The evidence goes no further than to disclose that the officers heard something of the intentions of two of the co-indictees and then followed them. We are aware of no merit in this assignment of error.

■ The sixth assignment of error states:

"The Court erred in allowing the prosecutor to use leading questions and abused the Court's discretion by denying motion for mistrial and making prejudicial remarks in presence of jury."

ORS 45.560 states:

"* * * On a direct examination, leading questions are not allowed, unless merely formal or preliminary, except in the sound discretion of the court, under special circumstances making it appear that the interests of justice require it."

The district attorney phrased some of his questions in leading form, but in many instances those questions pertained to formal matters concerning which the answer was quite obvious. The defendant offered objections not only to questions that were actually leading but also to some that did not suggest the answer. Upon one occasion, in ruling upon one of these objections, the trial judge commented:

> "It is true the questions are leading in form, but they are assisting the court somewhat in expediting the case. However, I would mention that the form is objectionable, and I would ask the District Attorney to rephrase the question."

Leading questions pertaining to formal and noncontroversial matters expedite the trial. The ruling apparently provided some of the basis for the motion for the new trial. The ruling was addressed to the attorneys and not to the jury. We are satisfied that the situation did not call for a new trial. The assignment of error is rejected.

The seventh assignment of error is based upon the denial of the defendant's motion for a mistrial which was made during the course of the district attorney's argument to the jury. The district attorney said,

> "You have heard the evidence. You know, as a matter of record, that this defendant has been convicted over the years on a great number of occasions, and you certainly are entitled to take these facts into consideration when you are considering his intentions."

The motion for a mistrial was denied in this ruling: "The Court will instruct the jury in regard to these exhibits and the purposes for which they can be used."

██ We have pointed out that a motion for a mistrial is addressed to the sound discretion of the trial

judge. We are aware of no abuse that occurred when the challenged ruling was made.

The eighth assignment of error states:

"The Court erred in giving the following instructions:

" 'The State has introduced evidence of former convictions of crimes during the process of this trial. You can only consider this testimony for the purpose of determining the credit to be given to the testimony of the defendant. You cannot consider this testimony as a circumstance from which you might infer guilt of the defendant in this case, but only as a matter affecting the credibility of the defendant as a witness in his own behalf in this case upon the witness stand'

" 'MR. CARSKADON: Also, you stated to the jury that there would be evidence here of former convictions introduced in this trial by the State. Now I think also there that they will have—the jury will have the idea that there is merely the former convictions against Mr. Murray, under that statement of the law as given by the Court. I think it should be broad enough to say there have been former convictions of the defendant here by both the State and brought out in the testimony by the defense on these witnesses. I don't believe that it is correct law to say, "former convictions of trial which were introduced in this trial by the State." ' "

Johnson, the co-indictee, who plead guilty and became a witness for the state, had a criminal record comparable to that of the defendant Murray. His record was submitted to the jury.

If the objections which the defendant's counsel made in the words which we just quoted from him were intended to request that the trial judge should give an instruction upon Johnson's credibility, they did not so state. Moreover, the request would have been tardy.

The defendant had requested no instructions concerning the bearing of Johnson's criminal record upon his credibility. The assignment of error reveals no merit.

The ninth assignment of error states: "The Court erred in sentencing the defendant to fifteen years in prison, when a co-defendant was given five years probation."

Normally, punishment is within the discretion of the trial judge subject, of course, to statutory limitations: *State v. Boloff,* 138 Or 568, 4 P2d 326, 7 P2d 775; *State v. Gust,* 218 Or 498, 345 P2d 808. In the recent decision of *State v. Scott,* 237 Or 390, 390 P2d 328, this court held:

> "The sentencing court in Oregon has the complete and unrestrained discretion to sentence a convicted defendant up to the maximum for the particular crime as fixed by the legislature. However, the Constitution of Oregon, Art. I, § 15, requires that reformation be the object of the sentence, not vindictive justice. Apart from this constitutional requirement, the sentencing court today considers the criminal, as much as the crime, in fixing the sentence. The application of these two principles can cause the same court to give two entirely different sentences to two defendants convicted of committing the same crime."

This assignment of error lacks merit.

The judgment of the circuit court is affirmed.