Argued February 22, affirmed May 15, reconsideration denied July 12, 1978, petition for review denied February 13, 1979

STATE OF OREGON, *Respondent,*

*v.*

DAVID DOUGLAS DINKEL, *Appellant.*

(No. 77-4375, CA 9558)

579 P2d 245

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for appellant. With him on

the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson, and Joseph, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

The primary issue presented by this appeal is the scope of this court's review of sentences as provided for in ORS 138.050 enacted by the 1977 Legislative Assembly.

In late July, 1977, defendant, aged 24, and his accomplice decided to kidnap a retail store manager in order to obtain money from the manager's store in the form of ransom. Defendant and his accomplice discovered the name of the manager of a large retail store in Eugene. After determining the manager's address from the phone book, they spent several days in the manager's neighborhood observing his habits. In early August, defendant and his accomplice broke into the manager's house while no one was home. Shortly thereafter, the manager's 13-year-old son and a friend entered the house. They were met by the defendant, who was holding a knife, and told to sit in kitchen chairs where they were tied up and gagged. Later the manager's wife and other son, aged 16, returned home and were also bound and gagged.

Twenty minutes later, the manager returned home. He was met at the door by the defendant, who was still holding a knife, and was shown his family. Subsequently, the defendant, his accomplice and the manager left the house in order to drive to the manager's store to obtain ransom money. Before leaving, the defendant told the family that if they attempted to leave the home, someone outside would "blow their heads off."

Upon arriving at the store, the defendant accompanied the manager inside while the accomplice waited in the car. The manager removed approximately $2,000 from the store safe and then returned to his car with the defendant. As the defendant and his accomplice drove away from the store, they were arrested by police, who had been called by the manager's family.

Defendant was indicted for five counts of kidnapping in the first degree (ORS 163.235), robbery in the first degree of the store manager (ORS 164.415), burglary in the first degree (ORS 164.225), and unauthorized use of a motor vehicle (ORS 164.135). Defendant pleaded guilty to all of the charges against him. The trial judge, before pronouncing sentence, made the following statement:

"The point of it is this, it's a very serious matter. I don't care whether or not you got the idea because of some prior event. It is apparent that you took at least a couple days to think this over before you did it and that there was force and a potential for serious injury under the circumstances of the weapon being used. We can only speculate on what would occur if one of these victims should have tried to do something other than comply. It's fortunate they did not.

"And I think it is certainly worth pointing out that you must not have had too much concern as far as the victims or otherwise you wouldn't have done this using a knife and subjected the people in their own home to this sort of conduct on your part.

"The Court bears in mind that your prior record is one primarily of property crimes and not of violence, although the record does reveal that you were involved in at least a fight involving some violence.

"However, the Court is primarily not basing its sentence on that fact alone, but on the seriousness of the charges really before the Court at this time. And I do think that it does exhibit a lack of care for other people and is entirely a means to gratify your own wishes and particularly, apparently, in connection with the fact that you are a drug abuser. There are other means open to you. There are agencies around to help people that have these problems. Instead you apparently chose to put other people through an experience like this to gratify your own particular desires.

"The Court regards you as a substantial danger to the community and I think also there is a very important need to deter others from this sort of conduct, particularly since you apparently got the idea about that from someone else that did it. And I think that there should be a clear message to anyone even considering this sort of

conduct that it is certainly something that the community does not in any way tolerate. The matter of rehabilitation should be left to the Parole Board. They are the best persons to determine what progress you might make and at the same time you will be structured in your behavior for a substantial period of time, at least until the Parole Board feels that your release should be no longer a threat to society."

The trial judge then sentenced the defendant to five concurrent 20-year terms on the kidnapping charges, a 20-year term on the robbery charge to run consecutively with the kidnapping sentence, a 20-year term on the burglary charge to run consecutively with the robbery charge and a five-year term on the unauthorized-use charge, to run consecutively with the burglary charge — a total of 65 years' imprisonment.

On appeal, defendant contends that the consecutive sentences imposed by the circuit court are excessive under the circumstances and constitute cruel and unusual punishment. He also contends that the burglary, kidnapping and unauthorized-use convictions should have merged into the robbery conviction for purposes of sentencing.

I

The 1977 Legislative Assembly, through Oregon Laws 1977, ch 372, §§ 1-18, extensively revised the Oregon statutory scheme relating to sentencing and parole of convicted criminal defendants and appellate review of sentences.

ORS 137.010(5)(a) authorizes the trial court to impose a sentence of imprisonment on a defendant convicted of an offense. Prior to sentencing on a felony conviction, ORS 144.790(1) requires that the Corrections Division furnish a presentence report to the sentencing court:

"(1) Whenever any person is convicted of a felony, the Corrections Division shall furnish a presentence report to the sentencing court. If a presentence report

has previously been prepared by the Corrections Division with respect to the defendant, the division shall furnish a copy of that report, and a supplement bringing it up to date, to the sentencing court * * *."

The presentence report must contain

"* * * recommendations with respect to the sentencing of the defendant, including incarceration or alternatives to incarceration whenever the Corrections Division officer preparing the report believes such an alternative to be appropriate. All recommendations shall be for the information of the court and shall not limit the sentencing authority of the court." ORS 144.790(1).

When the trial court sentences a defendant to a term of imprisonment after a felony conviction, ORS 137.120(2) requires that the court

"* * * shall * * * sentence such person to imprisonment for an indeterminate period of time, but stating and fixing in the judgment and sentence a maximum term for the crime, which shall not exceed the maximum term of imprisonment provided by law therefor; and judgment shall be given accordingly. Such a sentence shall be known as an indeterminate sentence * * *."

However, under ORS 144.110(1),

"[i]n any felony case, the court may impose a minimum term of imprisonment of up to one-half of the sentence it imposes."

Where a felony conviction is involved, ORS 137.120(2) also requires that "[t]he court shall state on the record the reasons for the sentence imposed."

A defendant who has pleaded guilty may appeal after sentencing pursuant to ORS 138.050, which provides:

"A defendant who has pleaded guilty or no contest may take an appeal from a judgment on conviction where it imposes a sentence that is cruel, unusual or excessive in light of the nature and background of the offender or the facts and circumstances of the offense. If the judgment of conviction is in the circuit court or the district court, the appeal shall be taken to the Court of Appeals; if it is in the justice of the peace court or

municipal court or city recorder's court, the appeal shall be taken to the circuit court of the county in which such court is located. On such appeal, the appellate court shall only consider the question whether an excessive, cruel or unusual punishment has been imposed. If in the judgment of the appellate court the punishment imposed is excessive, unusual or cruel, it shall direct the court from which the appeal is taken to impose the punishment which should be administered."

ORS 138.040 authorizes an appeal on identical grounds after judgment of conviction following a plea of not guilty. If, in the judgment of the appellate court, the sentence appealed from is excessive, unusual or cruel, both ORS 138.040 and ORS 138.050 state that

"* * * the appellate court shall direct the court from which the appeal is taken to impose the punishment that should be administered."

Within six months of the admission of the defendant to any state penal institution, ORS 144.120(1) requires that the Board of Parole conduct a hearing to set an initial release date of the defendant. In setting this initial release date, the Board is required by ORS 144.120(2) to

"* * * apply the appropriate range established pursuant to ORS 144.780. Variations from the range shall be in accordance with ORS 144.785."

ORS 144.120(3) also states that the Board shall consider, in setting the initial release date,

"* * * reports, statements and information received * * * from the sentencing judge, the district attorney and the sheriff or arresting agency."

Notwithstanding the provisions of ORS 144.120, a defendant who has been sentenced to a minimum sentence under ORS 144.110(1) may not be released

"* * * until the minimum term has been served, except upon affirmative vote of at least 4 members of the board." ORS 144.110(2)(a).

The Board is composed of five members. ORS 144.005.

ORS 144.780, referred to in ORS 144.120(2), and ORS 144.775 establish and set forth the duties of the

Advisory Commission on Prison Terms and Parole Standards. The Commission is composed of the five members of the Board of Parole, five circuit court judges, and the legal counsel to the Governor. ORS 144.775(1). The duties of the Commission are set forth in ORS 144.780:

> "(1) The commission shall propose to the [Board of Parole] and the board shall adopt rules establishing ranges of duration of imprisonment to be served for felony offenses prior to release on parole. The range for any offense shall be within the maximum sentence provided for that offense.
>
> "(2) The ranges shall be designed to achieve the following objectives:
>
> "(a) Punishment which is commensurate with the seriousness of the prisoner's criminal conduct; and
>
> "(b) To the extent not inconsistent with paragraph (a) of this subsection:
>
> "(A) The deterrence of criminal conduct; and
>
> "(B) The protection of the public from further crimes by the defendant.
>
> "(3) The ranges, in achieving the purposes set forth in subsection (2) of this section, shall give primary weight to the seriousness of the prisoner's present offense and his criminal history."

ORS 144.785(1) allows the Board of Parole to vary the ranges when aggravating or mitigating circumstances exist:

> "(1) The commission shall propose to the board and the board shall adopt rules regulating variations from the ranges, to be applied when aggravating or mitigating circumstances exist. The rules shall define types of circumstances as aggravating or mitigating and shall set the maximum variation permitted."

When a defendant is sentenced to two or more consecutive terms of imprisonment, the total period of imprisonment is, according to ORS 144.785(2), "[t]he sum of the terms set by the [parole] board pursuant to the ranges established for the offenses."

Once the initial release date of the defendant is set, the Board of Parole may postpone the scheduled date if, *inter alia,*

"* * * it finds, after hearing, that the prisoner engaged in serious misconduct during his confinement * * *." ORS 144.125(2).

The Board may also reset a defendant's initial release date

"* * * to an earlier time upon recommendation of institution superintendent, Chief of Field Services, or a Board member, and after the concurrence of a voting majority of the Board * * *." OAR 254-30-050(1).[1]

OAR 254-40-005(1), a Board of Parole rule adopted pursuant to ORS 144.780, requires that reviews of initial release dates

"* * * shall be conducted after four years have elapsed since the first Board hearing and every three years thereafter."

Once the Board has paroled a defendant, ORS 144.270(2)(g) authorizes it to suspend or revoke parole if it determines that parole is not in the best interest of the defendant or of society. The Board may also in effect shorten a sentence by discharging a defendant from parole under authority of ORS 144.310:

"When a paroled prisoner has performed the obligations of his parole for such time as satisfies the State Board of Parole that his final release is not incompatible with his welfare and that of society, the board may make a final order of discharge and issue to the paroled prisoner a certificate of discharge; but no such order of discharge shall be made within a period of less than one year after the date of release on parole, except that when the period of the sentence imposed by the court expires at an earlier date, a final order of discharge shall be made and a certificate of discharge issued to the paroled prisoner not later than the date of expiration of the sentence."

---

[1] The Board of Parole rules referred to in this opinion were adopted as temporary rules on March 1, 1978.

The case before us raises the issue of the scope of this court's review of a sentence imposed after a plea of guilty in a felony case as provided for by ORS 138.050, which states in pertinent part:

"* * * A defendant who has pleaded guilty or no contest may take an appeal from a judgment on conviction where it imposes a sentence that is cruel, unusual or excessive *in light of the nature and background of the offender or the facts and circumstances of the offense.* * * * On such appeal, the appellate court shall only consider the question whether an excessive, cruel or unusual punishment has been imposed. If in the judgment of the appellate court the punishment imposed is excessive, unusual or cruel, it shall direct the court from which the appeal is taken to impose the punishment which should be administered." (Emphasis supplied.)

The present version of ORS 138.050 was enacted into law by the 1977 Legislative Assembly in Oregon Laws 1977, ch 372, § 14. It is substantially identical to the statute as it previously existed except for the addition of the emphasized language. The scope of our review under the prior version of ORS 138.050 could be characterized as simply procedural, for sentences reviewed under its purview were not found to be excessive as long as they were within the statutory maximum allowed for any given offense. *See, e.g., State v. Murray,* 238 Or 567, 579, 395 P2d 780 (1964); *State v. Fisher,* 32 Or App 465, 469-79, 574 P2d 354 (1978); *State v. Tuck,* 1 Or App 516, 519, 462 P2d 175 (1969), *rev den* (1970), *cert den* 402 US 982 (1971).

The legislative history of the current version of ORS 138.050 is not very revealing as to what extent the scope of appellate sentence review under the prior version of ORS 138.050 was intended to be altered.

The Minutes of the Committee on Judiciary indicate that it intended that the "cruel" and "unusual" punishment language of the current version of ORS 138.050 be construed solely in constitutional terms. As far as the word "excessive" is concerned, the committee itself expressed no view as to its meaning,

but testimony given before the committee indicates that what became ORS 138.050 would permit appellate review of the imposition of consecutive sentences. That same testimony also indicated that no sentence imposed that fell within the statutory range should be considered to be cruel or unusual punishment.

The foregoing provides little guidance to this court as to the scope of its sentence review under this statute. Nevertheless, a comparison of the language utilized in the prior version of ORS 138.050 and the current version indicates that this court must now consider both the nature and the background of the offender and the facts and circumstances of the offense — in effect, substantive appellate review of a sentence.

It is generally recognized that the sentencing decision ordinarily seeks to accomplish one or more of the objectives of the criminal law: (1) rehabilitation of the defendant; (2) isolation of the defendant from society; (3) deterrence of other members of the community from committing similar future crimes; and (4) retribution by the community against the defendant for his acts. *See, e.g.,* W. LaFave & A. Scott, Criminal Law § 5, at 22-24 (1972); Hall, General Principles of Criminal Law 308 (2d ed 1960).[2] To make a reasoned sentencing decision, a trial judge must determine the priority and relationship of appropriate objectives in each particular case. The duration of a sentence should therefore depend on which of these objectives is to be accorded primary weight in a particular case and on the relative weight to be assigned to the secondary objectives. *See* W. LaFave & A. Scott, *supra,* § 5 at 25; Hart, *The Aims of the Criminal Law,* 23 Law & Contemp Prob 401 (1958); Yankwich, *Individualization of Punishment in the Federal Courts,* 20 FRD 385, 391-92 (1958). An

---

[2]The propriety of objective (4) is questionable in Oregon. *See* Or Const, Art I, § 15; *see also Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 105, 570 P2d 52 (1977).

appellate court authorized by statute to review sentences substantively must first interpret the legislation to determine whether it is required to substitute its judgment for that of the trial judge's in determining the weight to be accorded to these objectives or any other objectives a trial judge has deemed proper in imposing sentence.

One objection that has been raised against any such substitution of judgment by appellate courts is that it is unrealistic to assume that any court, whether it be at the trial or appellate level, can predict at the time of sentencing when a particular defendant should ultimately be released. *See* Brewster, *Appellate Review of Sentencing,* 40 FRD 79, 87 (1966). Advocates of this objection contend that the trial judge should fix the maximum sentence a defendant should receive and that a parole board should set the actual release date of the defendant in conformance with an indeterminate sentencing scheme. The parole board, it is argued, is in the best position to determine the actual incarceration time of the defendant and to correct any excessiveness in the sentence imposed because, unlike trial and appellate courts, it can follow the activities and behavior of the defendant while he is in custody and best estimate his future potential.

We believe the legislature has, with minor exceptions, adopted this concept in Oregon Laws 1977, ch 372. The roles played by the trial judge in Oregon in setting a maximum sentence and by the Oregon Board of Parole in setting the actual release date of a defendant conform to the concept discussed above. The Board of Parole is in the best position to evaluate the possible excessiveness of any maximum sentence imposed by the trial judge. It has a much longer period during which to evaluate a defendant on whom a sentence was imposed than does any court. It can postpone or advance the defendant's release date depending upon the defendant's progress while incarcerated, and by a 4/5 vote override a judicially imposed

minimum term. This decision will at least theoretically be predicated on concrete information about the defendant and not on the hypothetical speculation to which courts are limited. The ranges to be utilized by the Board of Parole in establishing release dates for defendants are promulgated by a commission composed only of Board of Parole members, five circuit judges and the Governor's legal adviser. This is further indication that the legislature did not intend that Oregon appellate courts have a dominant substantive role in the sentencing process. Indeed, we have difficulty in understanding why the legislature added to the scope of our review of sentences at all in light of the statutory sentencing and parole scheme which was adopted at the same time — particularly when we are the only entity involved in the sentencing process which has no personal contact of any nature with defendant or witnesses, but, rather, must confine ourselves exclusively to a written record. The scheme embodied in Oregon Laws 1977, ch 372, places the ultimate power of decision in the Board of Parole to determine the amount of time a felon will be incarcerated as well as the actual length of his total sentence, both in prison and on parole.

Under the new statutory scheme the initial sentencing responsibility remains with the trial court. Our review is not de novo and we therefore do not substitute our notion of an appropriate sentence for that of the trial court.

We presently perceive of only two circumstances which would authorize and require intervention by us in sentencing decisions. The first would arise if a trial court failed to comply with its statutory duty under ORS 144.790(1) by not considering a presentence report, or violated ORS 137.120(2) by failing to state on the record its reasons for the sentence imposed. The second circumstance would arise only when we find that a sentence imposed by a trial court is, as other jurisdictions with similar sentence review statutes have stated, "clearly mistaken," *Bordewick v. State,*

569 P2d 184, 187 (Alas 1977), or a "clear abuse of discretion." *State v. Waldrip,* 111 Ariz 516, 518, 533 P2d 1151 (1975).

We agree with the Commentary to the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentencing 49 (App Draft 1968), which reads:

> "It is difficult to articulate precisely the proper role of reviewing courts. The English have probably come the closest to the position endorsed here. In practice, the English court purports not simply to substitute its notion of the appropriate sentence for that of the trial judge. The Court says it will not 'tinker' with sentences. For example, twelve months imprisonment will not be reduced to nine months even though the latter is thought proper and is what would have been imposed if the appeals judges had been presiding at the trial. The Court has stated its policy thus: 'It is only when a sentence appears to err in principle that the Court will alter it. If a sentence is excessive or inadequate to such an extent as to satisfy this Court that when it was passed there was a failure to apply the right principles, then this Court will intervene.' [Meador, *The Review of Criminal Sentences in England,* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Appellate Review of Sentencing 125, Appendix C (App Draft 1968)]."

■ We turn now to a consideration of the sentence imposed in the case at bar. As noted above, the defendant here pleaded guilty to five counts of kidnapping, to first degree burglary, to first degree robbery and to unauthorized use of a motor vehicle. The presentence report prepared on the defendant and read by the trial judge indicates that the defendant is a 24-year-old male with a prior record consisting primarily of "bad check" offenses. Defendant received an undesirable discharge from the Army after he pleaded guilty to theft charges. After his Army discharge, defendant was employed sporadically as welder, steelworker and oil field laborer by various employers located in Wyoming and Colorado. He was married in 1975 and has one child, two years of age.

His marriage is intact and his wife is supportive of him. Defendant admits to severe intoxication on a daily basis and was under the influence of marihuana, amphetamines and cocaine when he was arrested.

The trial judge sentenced the defendant to a total of 65 years of imprisonment. The judge stressed that the deterrent objective of the criminal law deserved primary emphasis in this case:

"The Court regards you as a substantial danger to the community and I think also there is a very important need to deter others from this sort of conduct, particularly since you apparently got the idea about that from someone else that did it. And I think that there should be a clear message to anyone even considering this sort of conduct that it is certainly something that the community does not in any way tolerate."

As far as rehabilitation of the defendant was concerned, the trial judge stated:

"The matter of rehabilitation should be left to the Parole Board. They are the best persons to determine what progress you might make and at the same time you will be structured in your behavior for a substantial period of time * * *."

The sentence imposed by the trial judge was not excessive within the meaning of ORS 138.050. Whether we would have imposed a 65-year sentence is not dispositive. We cannot state that the trial judge either abused his discretion or violated some principle of sentencing in imposing such a sentence. The judge's statement of reasons for imposing sentence required by ORS 137.120(2) clearly articulates why he imposed the sentence he did. There is no basis for modification by us.

■■ Defendant also contends, apparently on constitutional grounds, that his sentence constitutes cruel and unusual punishment. A sentence can be deemed cruel and unusual punishment if it is so "disproportionate to the offense as to shock the conscience of fairminded men." *State v. Humphrey,* 253 Or 183, 184, 452 P2d 755 (1969); *State v. Van Kleeck,* 248 Or 7, 9, 432 P2d

173 (1967); *State v. Thornton,* 244 Or 104, 106-07, 416 P2d 1 (1966). It is hard to visualize a sentence which would not be excessive, but would be unusual and cruel. This is not such a sentence. In any event, the court in this case might have imposed five consecutive sentences for the defendant's convictions on five counts of kidnapping. Instead, it provided that all the kidnapping sentences run concurrently. This action does not shock our conscience.

## II

■ Defendant next contends that the trial court erred in failing to merge his kidnapping, burglary and unauthorized use of a motor vehicle convictions into his robbery conviction.

He first argues that his conviction for first degree burglary should merge into his conviction for first degree robbery. *State v. Cloutier,* 33 Or App 121, 575 P2d 996 (1978), is to the contrary.

■ Defendant next argues that his conviction for five counts of first degree kidnapping of five of his victims should merge into his conviction for first degree robbery of the store manager. He argues that the kidnappings were part of the same act or transaction involved in the robbery conviction and should therefore merge into that conviction for sentencing purposes. In essence, defendant is contending that all of his kidnapping convictions should merge into a single kidnapping conviction and that single conviction should then merge into his robbery conviction.

For several reasons we disagree. First, we reject defendant's initial premise that his five kidnapping convictions merge into a single conviction. Each of these kidnapping offenses was committed against a separate victim at one time and place. *State v. Gilbert,* 281 Or 101, 574 P2d 313 (1978), as interpreted in *State v. Cloutier, supra,* 33 Or App at 125-26, and *State v. Callaghan,* 33 Or App 49, 59-60, 576 P2d 14 (1978), permits a defendant to be separately sentenced for an offense committed against each of several victims at

the same time and place. Thus, we are left with the issue of whether the conviction which resulted from the kidnapping of the store manager merges into the conviction which resulted from the robbery of that same victim.

The defendant threatened the store manager with a knife in the manager's home in order to force the manager to give the defendant ransom money from the manager's store. Defendant then forced the manager to drive the defendant and his accomplice to that store. The transporting of the manager from "one place to another" within the meaning of ORS 163.225(1)(a) was not merely incidental to the robbery. The trial court did not err in failing to merge the sentences for defendant's kidnapping and burglary convictions. *State v. Steele,* 33 Or App 491, 577 P2d 524 (1978).

■ Finally, defendant argues that his conviction for unauthorized use of a motor vehicle should merge into his conviction for first degree robbery. Relying on *State v. Webber,* 14 Or App 352, 513 P2d 496 (1973), and *State v. Roach,* 19 Or App 148, 526 P2d 1402 (1974), *aff'd* 271 Or 764, 534 P2d 508 (1975), he argues that his unauthorized use of a motor vehicle was incidental to and necessarily involved in the first degree robbery and therefore should merge into the robbery conviction. Here the robbery indictment read in pertinent part:

"* * * [d]id unlawfully and knowlingly use and threaten the immediate use of physical force upon Donald M. Bock while armed with and using a knife, a dangerous weapon, while in the course of committing or attempting to commit theft of money, with the intent of preventing and overcoming resistance to the said defendant's taking of said money * * *."

Defendant's unauthorized-use-of-a-motor-vehicle indictment read in pertinent part:

"* * * [d]id unlawfully and knowingly take and exercise control over a 1976 Buick motor vehicle without the consent of the owners * * *."

A comparison of the two indictments indicates that the first degree robbery charge related solely to the theft of money and did not concern itself with the unauthorized use of a motor vehicle. Thus, unlike the indictments involved in *Roach* and *Webber*, the unauthorized-use charge was not encompassed by the first degree robbery charge. The indictments charged separate offenses and defendant can be separately punished for both. *State v. Cloutier, supra,* 33 Or App at 126.

Affirmed.