Argued and submitted October 22, 1979, reversed and
remanded for resentencing February 19, 1980

STATE OF OREGON,
*Respondent,*

*v.*

ARNOLD ROY BROWN,
*Appellant.*

(No. 78-4039, CA 13684)

606 P2d 678

.

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief were Gary D. Babcock, Public Defender, and Jeffrey C. Grant, Certified Law Student, Salem.

Darryl L. Larson, Assistant District Attorney, Eugene, argued the cause for respondent. With him on the brief was J. Pat Horton, District Attorney, Eugene.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

JOSEPH, P.J.

**JOSEPH, P.J.**

Defendant was convicted after trial by jury of burglary in the first degree. On appeal he assigns as errors: (1) refusal to suppress statements he made prior to *Miranda* warnings,[1] (2) failure to give a requested jury instruction concerning definition of burglar's tools, (3) overruling an objection to appearance of a witness for the state without notice to defendant prior to trial and (4) denial of defendant's motion to strike hearsay comments of the prosecutor at the sentencing proceeding. We consider in detail only the first and last assignments.[2]

Responding to a dispatch to assist city police in investigating a suspected ongoing burglary, a Lane County deputy sheriff stationed himself outside a skating rink in Eugene, Oregon, at about 1 a.m., in order to watch the exits. He observed defendant cautiously and furtively emerge from a door. When the officer yelled "Halt!," the defendant dropped several items he was holding and put up his hands. The officer testified that at that point defendant was not free to leave. The officer ran toward defendant, who said, "I won't go anywhere." The officer asked, "What are you doing?" and said, "Kind of got caught, didn't you?" Defendant replied, "Yeah, I guess I got to go to jail now." The officer then asked why he thought that. Defendant answered, "Because I broke into here," and pointed to the building. A city police officer who had just arrived then frisked defendant and informed him of his *Miranda* rights. The items found with defendant were a screwdriver, a pair of pliers and a gaff hook.

Defendant first argues that his statement that he had broken into the rink was improperly admitted because it was uttered prior to *Miranda* warnings. We

---

[1] *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

[2] As to the second assignment, the instruction given by the court quoted the statute, ORS 164.235(2), and was adequate. As to the third assignment, defendant did not request a continuance to prepare for cross-examination or rebuttal of the prosecution's last-minute witness.

agree that defendant was in custody for purposes of *Miranda* prior to that statement, because defendant could not have left the scene after the officer yelled "Halt!" *See State v. Paz*, 31 Or App 851, 860, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978). In this custodial setting, even if the first two questions were "investigatory" or otherwise proper, the officer's question "why" put to defendant was one "reasonably likely to elicit incriminating information." *State v. Gill*, 24 Or App 541, 545, 546 P2d 786 (1976). *Miranda* warnings should have preceded such a question, and it was error to admit the statement into evidence. The error, however, does not require a reversal even though it was of constitutional magnitude, for there was other evidence of defendant's guilt beyond a reasonable doubt. Or Const, Amended Art VII, § 3; *State v. Armstrong*, 38 Or App 219, 225, 589 P2d 1174 (1979); *see Chapman v. California*, 386 US 18, 87 S Ct 824, 17 L Ed 2d 705, *rev den* 386 US 987 (1967). Defendant was subsequently advised of his rights on three separate occasions; he acknowledged that he understood them; and he thereafter admitted his involvement in the burglary. He does not challenge the receipt in evidence of those admissions.

At the sentencing hearing the prosecutor said:

"*** It's our position that this young man—in my eight years in the District Attorney's Office, I can think of no one who poses a bigger threat to the community if he is not incarcerated than Arnold Roy Brown.

"In July—on July 29th, 1976, at about 6 o'clock p.m., Summer Rogers disappeared from the River Road area several blocks away from the defendant's home. The defendant later admitted that he was the last person with her, and that was independently verified by another lady in the River Road area who observed Summer Rogers carrying the defendant's tackle box on the way to the river.

"Summer Rogers' body was later found. I participated in the recovery of that body, and there was an extreme amount of blood on the front of her swimming suit, and there was also blood identified on

the defendant's sweatshirt that he had been wearing at the time he was seen going to the river with Summer Rogers.

"The defendant has had conversations with detectives of the Lane County Sheriff's Office, and following up what they already knew, the defendant indicated at one point that he—although his story has changed a number of times, at one point he indicated that what happened was she was wading in the river while he was fishing, basically the two of them together.

"She slipped and hit her head, and he got scared and threw her in the river and watched her float down in the current.

"Her body was recovered in the Willamette River some—oh, probably a mile or two, what would be north of the small community of Coburg.

"Later, approximately a year, slightly over a year ago, a young girl disappeared from a vehicle in Blue River, a young girl by the name of Tolantino.

"At that time, the defendant was working on a ranch near Sisters on Highway 126. The reason I mention this particular case is that on the way to the jail, the defendant, with a smile on his face, as the officer was looking in the rear-view mirror, asked the officer if they had ever found the little girl that disappeared in Blue River.

"It just happened that the officer that was transporting him was a lateral transfer from the State of California who had come to this area after the disappearance of the Tolantino girl, and knew nothing about the case or had any idea what the defendant was talking about, and, as a consequence, didn't know what to ask or what to say. He simply didn't know what the defendant was talking about.

"* * * * *."

Defense counsel moved to strike these comments on the grounds that the prosecution had no right to make unsworn hearsay statements in a sentencing proceeding and that the defense had been given inadequate prior notice that the first matter (Rogers) would be raised in any detail and no notice of the second matter (Tolantino).

Defendant does not predicate this assignment of error on the contention that the length of sentence imposed was excessive. *See State v. Dinkel,* 34 Or App 375, 389, 579 P2d 245 (1978), *rev den* 285 Or 195 (1979). Thus we do not review the substantive sentencing determination, but rather we focus upon the purported failures of the prosecution to comply procedurally with the applicable statutes. We have recently said that "the plain language of ORS 137.090[3] requires that the state must present this derogatory information by witnesses in open court." *State v. Collins,* 43 Or App 265, 268, 602 P2d 1081 (1979). It was error for the trial court to have considered the objected to matter.

Reversed and remanded for resentencing.[4]

---

3

"The circumstances which are alleged to justify aggravation or mitigation of the punishment shall be presented by the testimony of witnesses examined in open court, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken out of court at such time and place, and upon such notice to the adverse party, and before such person authorized to take depositions, as the court directs. The court may consider the report of presentence investigation conducted by probation officers pursuant to ORS 137.530 or any other person designated by the court."

[4] Whether a summary sentencing hearing is the proper forum in which to force a defendant to disprove culpability of unrelated criminal conduct is open to doubt. In *U.S. v. Weston,* 448 F2d 626, 634 (9th Cir 1971), the court said:

"This will not do. It is tantamount to saying that once a defendant has been convicted of offense A, narcotics agents can say to the probation officer, and the probation officer can say to the judge, 'We think that she is guilty of much more serious offense B, although all we have to go on is an informer's report,' and the judge can then say to the defendant, 'You say it isn't so; prove that to me!' In addition to the difficulty of 'proving a negative,' we think it a great miscarriage of justice to expect Weston or her attorney to assume the burden and expense of proving to the court that she is not the large scale dealer that the anonymous informant says that she is."

Although *Williams v. New York,* 337 US 241, 250, 69 S Ct 1079, 93 L Ed 1337 (1949), would apparently permit reference to such criminal conduct to be contained in a presentence report, we have reservations about the propriety of allowing a prosecutor in a summary sentencing proceeding to put on a case implicating a defendant in serious criminal activity for which the defendant has never been charged or tried.