Argued and submitted December 12, 1980, reversed and remanded
for new trial April 20, reconsideration denied June 4,
petition for review allowed June 30, 1981 (291 Or 151)

STATE OF OREGON,
*Respondent,*

*v.*

GARY PATRICK ROBERTI,
*Appellant.*

(No. T79-12-0348, CA 18838)

627 P2d 28

Sid Brockley, Oregon City, argued the cause and filed the brief for appellant.

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Defendant was convicted of the Class A traffic infraction of driving under the influence of intoxicants (ORS 487.540) after a trial to the court. He appeals from the judgment of conviction on the grounds that he made incriminating statements under circumstances which violated his rights under *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966), and that those admissions should not have been admitted into evidence over his objection. We reverse and remand.

On December 1, 1979, at approximately 2:10 a.m., an Oregon State Police officer observed defendant's automobile traveling nearly 80 miles per hour on Highway 26 in Clackamas County. The officer testified that the defendant was weaving, although this was denied by defendant's three passengers. After pulling over for the officer, who had turned on his overhead flashers, the defendant met the officer by the rear of defendant's car. The officer detected an odor of alcohol on defendant's breath and observed that his eyes were watery and bloodshot, that his face was flushed and that he swayed back and forth. The officer testified that the defendant stated that he knew how fast he had been going, that he had been fighting with his wife and that he had two boilermakers and a beer during the evening.

The officer, in preparation for administering the field sobriety tests, then inquired about defendant's education. In one test, defendant repeated the alphabet very well, but was unable to count backwards correctly; he staggered on the heel-to-toe test and was unable to stand on one leg for more than four seconds. He did well on the "finger-to-nose" test, but so badly slurred the months of the year that some were barely understandable.

The officer testified that at the completion of the field sobriety tests, and after he had decided to arrest the defendant, he asked defendant to rate himself on a scale of zero to ten, with zero being completely sober and ten being "falling down drunk." Defendant had no recollection of the question or the answer, but the officer testified that the defendant gave himself a "low 5" and admitted that he should not have been driving but should have allowed a

friend to drive. The officer's testimony as to these statements was admitted over the defendant's objection.

It was at 2:20 a.m., approximately ten minutes after the initial stop, and after the self-incriminating statements were purportedly made, that the officer told defendant that he was under arrest and read him his *Miranda* rights. He was then taken to the Sandy Police Department for a chemical breath analysis, the results of which were ruled inadmissible at trial due to defects in the test procedure. In addition, the conversation between the officer and defendant was tape recorded, but the tapes were ruled inadmissible on defendant's chain of custody objection.

The trial court, as finder of fact, relied on defendant's rating of his own intoxication, along with conflicting testimony as to the weaving and the results of the field sobriety tests in making his finding that defendant was guilty beyond a reasonable doubt.[1]

Defendant argues that the statements made in response to the officer's request that he rate his own intoxication after the decision to arrest had already been made were the result of a custodial interrogation and inadmissible because he had not previously been advised of his *Miranda* rights.

■■  This court has adopted an objective test of whether a person is in custody for the purpose of determining whether *Miranda* warnings must be given before questioning begins. The question of the extent of the restriction that may be placed on a person's freedom of action before *Miranda* protections must be afforded is decided according to the circumstances of each case, with the threshold test being whether a person is deprived of his freedom of action

---

[1] The trial court articulated the basis for its decision as follows:

"Well, I listened to this carefully and I have to disregard the evidence put in by the state on the breath test. But all in all, I'm convinced beyond a reasonable doubt that defendant was under the influence of intoxicants at the time based on the weaving which the officer testified to, the count backwards which he said he had all fouled up, the balance he said wasn't very good, and the defendant himself — when asked to rate himself between zero and ten whether sober to real drunk — said a 'low 5'. That indicates to me that he thought himself that he was somewhat affected. So the finding will be guilty of the charge."

in any significant way or is led to believe, as a reasonable man, that he is so deprived. *State v. Paz,* 31 Or App 851, 858, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978); *State v. Armstrong,* 38 Or App 219, 224, 589 P2d 1174, *rev den* 287 Or 129 (1979). We have articulated three factors to be utilized in making this "custody" determination: (1) whether the defendant could have left the scene voluntarily; (2) whether the defendant was questioned as a suspect or merely as a witness; and (3) whether the defendant voluntarily accompanied the police to the scene of the interrogation. *State v. Paz, supra,* 31 Or App at 859-61.[2]

Application of the two relevant *Paz* factors outlined above (i.e., freedom to leave and the objective of the questioning) to the circumstances of this case points to the conclusion that defendant was in custody at the time he made the incriminating statements. He was clearly questioned as a suspect rather than a witness. He was not free to leave; the officer had determined to arrest him before the question was asked. This is in contrast to the situation in *State v. Mitchell,* 35 Or App 809, 583 P2d 14 (1978), *rev den* 285 Or 73 (1979), where the suspect might have been free to leave had his answer to the question been an exculpatory one and where there was no evidence of a police-dominated atmosphere having coercive overtones. 35 Or App at 817.

While we have refused to treat every vehicular stop as custodial for *Miranda* purposes, *State v. Ferrell,* 41 Or App 51, 596 P2d 1011 (1979) (a statement made within a minute or two of a stop and in response to a reasonable investigatory inquiry was not made while in "custody"); *State v. Chaput,* 43 Or App 831, 604 P2d 435 (1979) (an off-duty officer's "citizen's stop" of an erratic driver was not custodial despite the fact that he took the driver's keys and license and asked factual questions), we cannot say that a vehicular stop is never custodial short of the point of actual

_____

[2] We based our decision, in part, on *Oregon v. Mathiason,* 429 US 492, 97 S Ct 711, 50 L Ed 2d 714 (1977), where the United States Supreme Court relied upon the fact that the defendant had come voluntarily to the station, that he was told that he was not under arrest and that he was allowed to leave at the conclusion of the interview in its holding that the station house interview was not inherently custodial merely because of the coercive environment, 429 US at 495. The court stated that *Miranda* is limited to those coercive environments where there has been such a restriction on liberty to render a person "in custody."

physical restraint or formal notification of arrest. The Oregon Supreme Court recognized a limit to the investigatory stage of an automobile accident investigation when it held:

> " * * * the officer asked more questions than the minimum necessary to establish probable cause, but as soon as he concluded that an arrest should be made he stopped and advised the defendant of his rights. No questions were asked after the defendant was arrested. Under these circumstances, we hold that the officer's investigation did not produce inadmissible evidence under the *Miranda* rule." *State v. Taylor,* 249 Or 268, 272, 437 P2d 853 (1968).

By the officer's own testimony a point was reached at which the officer had decided to arrest defendant. Defendant was not free to leave. At that point questioning should have ceased and *Miranda* warnings been given. However, the officer did not cease questioning the defendant before giving him the warnings. The question asking defendant to evaluate his own sobriety was put to the defendant after factual inquiries had been completed and after he was compelled to perform a series of physical tests under the officer's control. The question itself was not intended to produce investigative, factual information, but to elicit incriminating information about the defendant's subjective opinion as to his own condition. *State v. Brown,* 44 Or App 597, 606 P2d 678 (1980). At the time the question was asked and answered, the encounter had become a custodial interrogation. The admission of the incriminating statement was error.

We now turn to the question of whether the erroneous admission of the statements was prejudicial to the defendant. There must have been substantial and convincing evidence of guilt and the error must have been unlikely to have changed the results at trial in order to warrant an affirmance despite error. *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973); Or Const., Amended Art. VII, § 3; *State v. Armstrong, supra,* 38 Or App at 225. Before a federal constitutional error can be held harmless, the court must be able to conclude that it was harmless beyond a reasonable doubt. *Chapman v. California,* 386 US 18, 87 S Ct 824, 17 L Ed 2d 705 (1967).

The result of the field sobriety test was equivocal, and it is clear from the language employed by the trial court that the statements were of significance in its decision that the defendant was guilty. We conclude that the erroneous admission of the statements was not harmless beyond a reasonable doubt.

Reversed and remanded for new trial.