Argued and submitted February 8, affirmed and remanded April 27, reconsideration denied June 10, 1983, petition for review denied July 31, 1984 (297 Or 546)

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL ALAN BAKER,
*Appellant.*

(10-81-06297; CA A24327)

662 P2d 365

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Kay Kiner James, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Richard D. Wasserman, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendant was indicted for burglary of a dwelling. ORS 164.225. He moved to suppress statements made to officer Bishop on May 2, 1981, and officer Antoine on June 26, 1981. The trial court ruled that the statements to Bishop were admissible but that the statements to Antoine must be suppressed. The state appealed under ORS 135.080(3), and defendant cross-appealed. ORS 138.040. Subsequently the state moved to dismiss its appeal. We granted the state's motion but allowed defendant to proceed with his interlocutory cross-appeal. We affirm the court's denial of defendant's motion to suppress his statements to Bishop and remand for trial.

■ The trial court made no findings of historical fact but concluded that the statements were admissible. If no such findings are made and if there is evidence from which the facts could be decided in more than one way, we presume that the facts were decided in a manner consistent with the court's ultimate conclusion. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

On April 29, 1981, a residence was burglarized. On the morning of May 2, 1981, Bishop stopped defendant in his pickup truck. The police had received information that after the burglary a pickup truck matching defendant's vehicle was seen leaving the location, that defendant's hat with a "Flaming Gorge" patch was found in the residence and that blood had been found on the windowsill of a broken window of the residence. The police also knew that before the burglary both the owner of the residence and his brother were acquainted with defendant and that defendant had visited the residence.

Bishop drove a marked police car, used his over-head lights to stop defendant, was armed, in uniform, and accompanied by a second policeman in another police car. He testified that he stopped defendant because in his mind "he was definitely a suspect." Bishop told defendant when he was stopped:

"Words to the effect of, 'the reason I stopped you is I have been told that a burglary had occurred at such and such a location and we had received information that the

suspect was leaving that location, that I had a vehicle description given to me and that was the same vehicle that he was driving.' "

Bishop asked defendant to get out of the truck and come to the back of the truck "to talk with me" "to give me an explanation" regarding the information he had related to defendant.

Bishop described the conversation:

"We discussed a hat that was found at the residence and he indicated that the hat must have been left on some prior occasion because he had visited the residence on several occasions. We discussed the injury to his knee. He stated that he had sustained it while he involved in a fight the night prior. * * * He said he fell to the pavement and scraped it on the 'pavement.' * * * He insisted he got it in a fight."

Bishop observed that defendant's leg wound was more of a puncture than an abrasion. Following the conversation, defendant and Bishop parted. Defendant was not arrested until seven weeks later after additional evidence of his involvement was obtained.

■ When Bishop stopped defendant, he had a reasonable suspicion that defendant had committed the burglary. Defendant asserts that Bishop should have given him *Miranda* warnings before he asked him questions and, because Bishop did not do so, that defendant's answers should have been suppressed.[1] As stated by Justice Lent in *State v. Roberti,* 51 Or App 783, 627 P2d 28 (1981); *rev'd* 293 Or 59, 644 P2d 1104, *aff'd* 293 Or 236, 646 P2d 1341 (1982):

"* * * The only relevant inquiry is whether this defendant was 'in custody or otherwise deprived of his freedom of action in any significant way.' If so, at that point the officer had to administer the *Miranda* warnings in order for the state to use the fruits of further interrogation." 293 Or at 86.

"* * * * *

---

[1] We do not decide, because defendant does not raise the question, whether Bishop's questions were within ORS 131.615(1) as being "limited to the immediate circumstances that aroused his suspicion."

"The point at which the defendant is in custody or otherwise deprived of his freedom of action in any significant way marks a crucial point in the process. At that point, ruled the *Miranda* court, the defendant should be advised of the constitutional guarantees that he shall not be 'convicted out of his own mouth' in ignorance of those guarantees." 293 Or at 89.

In *State v. Wells,* 58 Or App 617, 650 P2d 117 (1982), the first of several post-*Roberti* cases in this court, we stated:

"* * * The rationale of *Roberti* is not as clear as it might be inasmuch as the final decision of the Supreme Court consists of a one-page announcement to the effect that one judge had withdrawn a former concurring opinion and that a former dissenting opinion which had originally expressed the opinion of two judges now had the support of four judges. * * *" 58 Or App at 620.

We concluded, however, that the final version of *Roberti* stands for "the 'bright line' proposition that, once an officer has decided to arrest a person, it is necessary to warn the person of his right to remain silent." *State v. Wells, supra,* 58 Or App at 620. In *State v. Taylor,* 59 Or App 396, 650 P2d 1090 (1982), we concluded:

" * * * At the moment the officer decided the defendant was not free to leave the scene of the stop, he was significantly deprived of his freedom of action and was 'in custody.' * * *" 59 Or App at 399.

■ Accordingly, if Bishop had formed an intention to arrest defendant, and even if that intention was not communicated to defendant, he was from that time "in custody or deprived of his freedom of action in a significant way," and *Miranda* warnings should have been given before Bishop questioned defendant further. Here the evidence does not show that Bishop at any time before or during the questioning of defendant on May 2 intended to arrest him. But this does not fully resolve the matter.

Prior to *Roberti,* in *State v. Paz,* 31 Or App 851, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978), this court adopted a three-part test for whether a person is "in custody" so that *Miranda* warnings must be given: (1) whether the defendant could have freely left the scene; (2) whether the defendant was questioned as a suspect or a

witness; and (3) whether the defendant voluntarily accompanied the police to the scene of the interrogation.

During the period of the stop, defendant was not free to leave. *State v. Brown,* 31 Or App 501, 570 P2d 1001 (1977). Bishop, furthermore, questioned defendant as a suspect and not merely as a witness. Defendant did not voluntarily attend the questioning. He was stopped by an armed policeman and requested to walk to the back of his vehicle.

■ We also do not find that the *Paz* test, however, resolves the *Miranda* issue here. *Paz* was a case of interrogation at the police station. The stop here was not a traffic stop, because Bishop did not stop defendant for a violation of law he had observed. His questions were intended to obtain information from defendant about the burglary. But we can infer from the record that Bishop had significant doubts, when he stopped defendant on May 2, that defendant was criminally involved, even though he was a suspect. Defendant, as he told Bishop, had been at the victim's dwelling on several occasions before the burglary. Defendant and the victim were acquainted. The conversation at the stop did not dispel Bishop's doubts. Accordingly, Bishop did not then arrest, or form an intention to arrest, defendant. We cannot say, under the facts of this case, that when defendant was stopped and questioned by Bishop on May 2, he was "in custody or otherwise deprived of his freedom in any significant way" within the meaning of *Miranda.*

Affirmed and remanded for trial.