Argued July 27, affirmed in part; reversed and remanded
in part August 27, 1973

STATE OF OREGON, *Respondent, v.* LARRY
RALPH MILLER (No. 72 3201), *Appellant.*
513 P2d 508

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

SCHWAB, C. J.

Defendant upon trial to a jury was convicted of two counts of criminal activity in drugs in violation of ORS 167.207 and received concurrent sentences of five years' imprisonment. The indictment read:

## "COUNT I

"* * * LARRY RALPH MILLER on * * * the 19th day of August, 1972 * * * acting together in pursuance of a common intent with Kay Frances Yarbrough, did knowingly and unlawfully transport the dangerous drug methamphetamine in a 1965 Ford automobile on Highway 101, Florence, Oregon * * *

## COUNT II

and as part of the same act and transaction set out in Count I herein * * * Larry Ralph Miller on or about the 19th day of August, 1972 * * * did knowingly and unlawfully possess the dangerous drug methamphetamine * * *."

The pertinent portion of ORS 167.207 states:

"(1) A person commits the crime of criminal activity in drugs if he knowingly and unlawfully manufacturers [sic], cultivates, transports, pos-

sesses, furnishes, prescribes, administers, dispenses or compounds a narcotic or dangerous drug."

On August 11, 1972, the defendant approached an informant working for the Lane Interagency Narcotics Team (LINT) and asked him to obtain a certain chemical used to make methamphetamine. The informant obtained the chemical from an officer assigned to LINT and furnished it to the defendant. The defendant and an accomplice proceeded to manufacture a quantity of the drug methamphetamine. The informant continued to provide the LINT team with information, and on August 19, at 10 p.m., the informant again contacted the LINT officer and notified him that the defendant and his accomplice were about to leave Florence, Oregon, and go to Eugene in an automobile with some methamphetamine they had just manufactured. The informant gave the officer a complete description of the car in question.

In response to this telephone call the car in which the defendant was a passenger was stopped by the police on the highway near Florence; the defendant's accomplice was driving the car. The driver of the car consented to a search of her handbag. When suspected drugs were found, the defendant was placed under arrest and subjected to a pat-down search. This search produced a small bottle containing a syringe and needles. The driver of the car was also arrested at this time. The car was towed to the Florence Police Department and searched by the police. This search produced additional quantities of what was later proved to be drugs including methamphetamine as well as glassware, vials, tubing and other equipment. At a pretrial hearing, the defendant moved to suppress all evidence seized from his person, all evidence seized

from the driver of the car as well as all evidence obtained from the seized automobile. The motion to suppress was denied by the trial judge.

Defendant makes two assignments of error: (1) that the motion to suppress should have been allowed for lack of probable cause and lack of consent; and (2) that in any event, the facts disclose that the defendant was guilty of one, and not two crimes.

■ The first assignment of error does not warrant much discussion. As the above statement of facts discloses, there was ample probable cause to support the search of defendant, his accomplice and the automobile in which they were riding. *Chambers v. Maroney,* 399 US 42, 90 S Ct 1975, 26 L Ed 2d 419 (1970); *Draper v. United States,* 358 US 307, 79 S Ct 329, 3 L Ed 2d 327 (1959); *State v. McCoy,* 249 Or 160, 437 P2d 734 (1968); *State v. Keith,* 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970).

Turning to the second assignment of error, it is important to note that neither the indictment nor the evidence offered by the state indicates other than that the state was relying upon the same drug to support both the charge of transportation and the charge of possession. Likewise, the court's instructions made it clear to the jury that it could rely upon the same drug to support both convictions.

■■ While a legislative body may carve more than one crime out of a single act, *Gore v. United States,* 357 US 386, 78 S Ct 1280, 2 L Ed 2d 1405 (1958), courts will not so interpret legislative enactments in the absence of indication of such intent on the part of the legislative body. *State v. Welch,* 264 Or 388, 505 P2d 910 (1973); *State v. Meyer,* 12 Or App 486, 507 P2d 824

(1973). The statute here in question, ORS 167.207, sets forth that a person may be guilty of the crime of criminal activity in drugs by one of nine different methods, i.e., manufacturing, cultivating, transporting, possessing, furnishing, prescribing, administering, dispensing or compounding. The maximum penalty for violation of ORS 167.207 (1) is ten years' imprisonment. We find no evidence of legislative intent that a person carrying a dangerous drug in a car be thereby guilty of two violations of ORS 167.207 (1), and therefore subject to 20 years in prison. We hold that under the facts of this case the defendant was guilty of one, and not two crimes.

The language in *Welch* is so closely on point that it bears repeating:

"* * * In *Bell* [Bell v. United States, 349 US 81, 75 S Ct 620, 99 L Ed 905 (1955)], the Supreme Court of the United States used the following language:

" '* * * When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a pre-supposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it as-

sume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes.' 349 US at 83-84.

"We are in sympathy with such language and therefore treat the present transaction as encompassing only one offense. We have to admit that the legislature probably never considered our present problem in adopting the language of the statute. However, if it had considered the problem, we suspect it would have chosen not to impose multiple punishments.

"Our present ruling must be distinguished from two related situations concerning the manner in which a defendant is charged and tried. First, there was nothing improper in charging the defendant in two separate counts as was done in this case. The state cannot be forced to choose with which of the checks it will charge defendant. There is always the possibility that the proof might ultimately fail as to one of the checks, and the state should not be deprived of the opportunity of attempting to prove both. 5 Wharton's Criminal Law and Procedure 37, § 1935 (1957 ed) states:

" 'It has long been the approved practice to charge, by several counts, the same offense as committed *in different ways* or by different means, to such extent as will be necessary to provide for every possible contingency in the evidence * * *.' (footnote omitted; emphasis ours.)

"The second related situation which must be distinguished from the present case is the one with which this court dealt in *State v. Brown,* 94 Or Adv Sh 1591, 262 Or 442, 497 P2d 1191 (1972). We there required, with minor exceptions, that all available

charges of crime arising out of the same transaction be prosecuted in one case and at the same time. We did so upon the basis that we were interpreting the double jeopardy provision of the Oregon Constitution, Art. I, § 12, to so require. We there reserved the present question of multiple punishments for different aspects of a single act or course of conduct.

"The question concerning what constituted a single act [crime] * * * is one that is often troublesome. However, in the present case it is clear that the act of publishing the two checks was a single * * * [crime]." 264 Or at 393-95.

■ We have taken note of the determinative assignment of error even though it was not raised in the court below. It should not be assumed that we will follow this practice in the future as to this type of issue. *See,* discussion in *State v. Webber,* 14 Or App 352, 513 P2d 496 (1973).

Conviction for one count of criminal activity in drugs affirmed; conviction for the other count is reversed and this case is remanded for entry of a new judgment order in accordance with this opinion.

Affirmed in part; reversed and remanded in part.