Argued July 24, affirmed in part; reversed in part August 27, 1973

STATE OF OREGON, *Respondent, v.*
GERALD WEBBER (No. C-71-06-1757 Cr),
*Appellant.*

513 P2d 496

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*John W. Osburn,* Solicitor General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John H. Clough, Assistant Attorney General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

SCHWAB, C. J.

Defendant was convicted on charges of burglary

in a dwelling, former ORS 164.230, armed robbery, former ORS 163.280, and larceny, former ORS 164.310. He was sentenced to ten years on the burglary charge, fifteen years on the armed robbery charge, and ten years on the larceny charge, the sentences to run concurrently. On appeal defendant contends it was error: (1) to enter judgments of conviction and impose sentences on all crimes charged; and (2) to overrule his objections on the grounds of materiality to two exhibits introduced at trial.

The burglary count of the indictment alleged defendant entered the victim's home "with the intent to commit the crime of larceny." The armed robbery count alleged defendant "did feloniously assault and rob, steal and take an automobile registration from" the victim. The larceny count alleged defendant "did feloniously wilfully steal and drive away a 1969 Ford automobile."

The state's evidence established that while the victim was asleep in his Portland residence, somebody struck him from the rear, put a pillowcase over his head and tied him up. The assailant then spent two to three hours in the victim's home, collecting everything of value. The assailant then left, taking items stolen from the victim's person and house, including the automobile registration, and driving away in the victim's 1969 Ford.

After the assailant left, the victim was able to get a gag out of his mouth and yell for help. Police arrived at the victim's residence and, after learning what had occurred, broadcast a description of the victim's automobile.

Several hours later a Washington State Policeman observed the victim's automobile being driven by

defendant. The officer learned by radio that the vehicle and operator were being sought by Portland police. Washington officers chased and eventually arrested defendant. They seized many items from the car. It was stipulated between the parties that the items seized from the car included all or most of the things taken from the victim's home.

Defendant's first contention—that it was error to convict and sentence him on all three crimes charged—raises questions involving *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971), and *State v. Welch,* 264 Or 388, 505 P2d 910 (1973). *Welch* states that whether a defendant's conduct violates different statutes or the same statute more than once is a question of legislative intent. *Woolard* states that even when separate statutes are violated, whether separate convictions and sentences can be imposed is also a question of legislative intent.

An important preliminary question is whether we should reach the merits of defendant's contention, in light of the fact that no *Woolard-Welch* objections were made in the trial court.

*State v. Farr,* 8 Or App 78, 492 P2d 305 (1971), Sup Ct *review denied, cert denied* 406 US 973 (1972), was a case involving a *Woolard* error in which no objection had been made in the trial court. We regarded that as error apparent on the face of the record in accordance with Rule 5.40 of the rules of this court and disposed of it on its merits. 8 Or App at 82, n 1.

Since *Farr,* we have considered *Woolard* errors in several other cases, without explicit reference to the fact that no objection had been made in the trial court or to Rule 5.40.

However, *Farr* and our other cases do not stand

for the proposition that we will always, as a matter of law, consider *Woolard* errors in the absence of proper objection in the trial court. The general rule remains that only alleged errors objected to in the trial court will be considered on appeal. We have been lenient in deviating from this general rule in cases that were tried just before or just after *Woolard* was decided. That is not the situation here. An opinion denying rehearing in *Woolard* was filed June 23, 1971. This case was tried December 18, 1972. We would expect that after this length of time the Bar would be well acquainted with the *Woolard* doctrine. Nevertheless, in this instance, we will reach the merits of defendant's *Woolard* and *Welch* contentions, even though no objection was made in the trial court. It should not be assumed that we will do so again.

■■ Applying the *Welch* analysis, we conclude that the taking of the victim's automobile was part of defendant's commission of an armed robbery, and did not constitute the separate crime of larceny. The relevant armed robbery statute, former ORS 163.280, provided:

"* * * [A]ny person, being armed with a dangerous weapon, who assaults another and who robs, steals or takes from the person assaulted any money or other property which may be the subject of larceny, shall be punished upon conviction by imprisonment in the penitentiary for life or for any lesser term * * *."

Under this statute, the requirement of a taking "from the person assaulted" could be established by a taking of property that was in the victim's presence or under the victim's control. *State v. Carcerano,* 238 Or 208, 390 P2d 923 (1964), *cert denied* 380 US 923 (1965).

" "* * * A thing is in the presence of a person in respect to robbery, which is so within his reach,

inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain its possession * * *.'" *State v. Carcerano,* supra at 220, quoting from *State v. Deso,* 110 Vt 1, 6, 1 A2d 710 (1938).

In this case, everything the defendant took, including the victim's automobile, was in the victim's presence and under the victim's control within the *Carcerano* rule.

Thus, the taking of the automobile was but one part of the single crime of armed robbery, and it was improper to treat the taking of the automobile as the separate crime of larceny. *See, State of Oregon v. Mc-Cormack,* 8 Or 236 (1880) (holding that taking several items at the same time and place from the same person constituted one crime) ; *cf., State v. Welch,* supra. The larceny conviction must be reversed.

■ This leaves the crimes of burglary and armed robbery. Applying the *Woolard* analysis, we conclude that defendant should have only been convicted and sentenced for armed robbery, not both armed robbery and burglary. The relevant burglary statute, former ORS 164.230, provided:

> "Any person who breaks and enters any dwelling house with intent to commit a crime therein, or having entered with such intent, breaks any dwelling house, or is armed with a dangerous weapon therein, or assaults any person lawfully therein, is guilty of burglary, and shall be punished upon conviction by imprisonment in the penitentiary for not more than 15 years."

*Woolard* holds that the legislature did not intend that a person who enters a dwelling house with intent to commit larceny could be convicted and sentenced for both burglary and larceny. It would appear

to follow under the terms of former ORS 164.230 that the legislature did not intend that a person who unlawfully enters a dwelling and "assaults any person" therein could be convicted and sentenced for both burglary and assault. It should be noted that we are here dealing with a situation in which the victim was the owner and only occupant of the house. Robbery is, in effect, a combination of the crimes of assault and larceny. Thus, the question comes down to: Given that the legislature did not intend separate convictions for burglary and larceny, and assuming the legislature did not intend separate convictions for burglary and assault, did the legislature nevertheless intend separate convictions for burglary and armed robbery, when armed robbery is, in effect, a combination of assault and larceny?

■ The legislature's intent in this matter is, at best, ambiguous. The Oregon Supreme Court has stated that uncertainty about the legislature's intent must be resolved in the defendant's favor in a case like this. *State v. Welch,* supra. Accordingly, we are forced to conclude that in this case defendant could not be convicted and sentenced for both burglary and armed robbery. Under *Woolard* only the conviction carrying the greater possible sentence can stand. Thus, the armed robbery conviction and sentence must be affirmed; the burglary conviction and sentence must be reversed.[1]

---

[1] If the only question presented were whether, under State v. Woolard, 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971), defendant could be convicted for burglary of the victim's home and larceny of the victim's automobile, we might well have answered this question in the affirmative because the automobile was taken from a detached garage, not from the victim's home. *See,* State. v. Burns, 9 Or App 392, 495 P2d 1240 (1972). However, as noted

Defendant's other assignment of error challenges the admission into evidence of a chisel and a ski mask—two items that were seized from the victim's automobile at the time of defendant's arrest. Defendant contends that both exhibits were immaterial, and that "their prejudicial effect on the jury far outweighed any probative value they may have had."

■ This chisel was material and admissible. The victim testified that, in attempting to determine how his home was entered, he found indications that a window screen had been pried open. The chisel found in defendant's possession could have been used for this purpose. No error was committed by admitting it into evidence.

The relevance and materiality of the ski mask is less clear. The victim testified that he never saw his assailant because of the pillowcase over his head; the victim said nothing about his assailant wearing a mask. The state suggests the mask was admissible as a "burglar tool," citing the definition of that term in ORS 164.235 (2). Aside from the fact that ORS 164.-235 (2) was not in effect at the time the crimes occurred, we have difficulty imagining how a cloth mask could be used for committing a forcible entry as those terms are used in the statutory definition.

■ But even assuming it was error to admit the ski mask, we have greater difficulty imagining how

above, we conclude the taking of the automobile was really just one aspect of the crime of armed robbery; that conclusion does not depend upon whether the garage was attached to or detached from the victim's home, except in so far as the location of the car is relevant to whether it was under the victim's control within the meaning of State v. Carcerano, 238 Or 208, 390 P2d 923 (1964), *cert denied* 380 US 923 (1965).

such error could have been prejudicial. Defendant contends that proof that he had a ski mask in his possession tended only to prove that he was the kind of person who might commit the crimes of burglary, armed robbery and larceny. We disagree. Introduction of the ski mask did not tend to prove anything. Therefore, any error committed was clearly harmless. *State v. Van Hooser*, 266 Or 19, 511 P2d 359 (1973).

Conviction and sentence for armed robbery affirmed; convictions and sentences for larceny and burglary reversed.