Argued January 18, affirmed March 5, petition for
reconsideration denied May 16; petition for
review denied September 5,1979

# STATE OF OREGON, *Respondent,*
## *v.*
# STEVEN RANDALL APPLEGATE, *Appellant.*
## (No. C 77-08-10871, CA 11186)

591 P2d 371

Stephanie A. Smythe, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Tanzer, Richardson and Roberts, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.,**

Defendant was indicted for three crimes alleged to have been committed as part of a single transaction: Count I—third degree robbery of Billy D. Dixon "by striking [him] about the head while in the course of committing theft of * * * [Dixon's] lawful currency"; Count II—unauthorized use of Mr. Dixon's automobile; Count III—first degree theft by taking "lawful currency * * * the property of George K. Rowe, doing business as Roaring West Tavern." Defendant was convicted and sentenced on all counts. Although the issue was not raised in the trial court, on appeal defendant contends that the three counts should be merged and a single conviction entered and single sentence imposed.

The evidence established that Mr. Rowe owned the Roaring West Tavern and Mr. Dixon was the manager. The evening of July 22, 1977, Dixon was tending bar and defendant was a customer. When the tavern closed, Dixon and defendant left together to socialize elsewhere. Dixon placed over $500 in tavern receipts in the trunk of his car, presumably to deposit in the bank the next day. Dixon and defendant then went tavern-hopping for several hours, traveling in Dixon's 1970 Cadillac. Later, by which time it was the early morning hours of July 23, defendant struck Dixon in the face and head and demanded and took the money in his wallet—the basis of the robbery charge. Defendant then drove off in Dixon's car—the basis of the unauthorized-use charge. When the car was recovered a couple of days later, the tavern receipts were gone from the trunk—the basis of the charge of theft of *Rowe's* property.

Defendant was represented at trial by an experienced criminal defense attorney from the office of the Metropolitan Public Defender. At no point in the proceedings did his counsel in any way suggest that the merger doctrine was applicable or that defendant could not be separately convicted and sentenced on the

[19]

three counts. When the trial court did, in fact, enter separate convictions and sentences on the three counts, there was not a single syllable of objection.

■ Whether and to what extent merger questions have to be first raised in the trial court as a condition precedent to appellate consideration has long been a problem in this court. We have frequently noted merger issues—especially novel ones—despite the fact that they were not raised in the trial court. But as various facets of the merger doctrine have become firmly established by our decisions, we have stated that we will not consider those particular facets unless the merger issue was first raised in the trial court. *State v. Allen*, 25 Or App 57, 548 P2d 169, *rev den* (1976); *State v. Webber*, 14 Or App 352, 513 P2d 496 (1973). Such pronouncements were not intended. to, and have not, barred us from considering new and different facets of the merger problem on our own initiative. *State v. Boyd*, 15 Or App 650, 517 P2d 321 (1973), *rev den* (1974); *State v. Reed*, 15 Or App 593, 517 P2d 318 (1973). Thus, a synthesis of our decisions would be: generally, merger questions must be raised in the trial court, especially those merger questions that are relatively settled; but in exceptional circumstances this court reserves the right to consider a merger question not raised in the trial court, especially when it presents a novel problem.

This synthesis was recently challenged in *State v. Harris*, 37 Or App 715, 720, 588 P2d 100 (1978) (specially concurring opinion). There it was argued that merger "ought not to be the kind of error that is waived if not raised in the trial court." 37 Or App at 720. Because of this challenge, we here reconsider— and attempt to finally resolve—the question of whether merger issues must be presented to and preserved in the trial courts.

The presentment-and-preservation or raise-or-waive rule has a partially statutory basis, ORS 17.505 to 17.515 and is embodied in Rule 7.19, Rules of

[20]

Procedure of the Supreme Court and Court of Appeals. And aside from the statute and court rule, a general common-law raise-or-waive rule has been applied in all types of cases, *Rea v. Rea*, 195 Or 252, 245 P2d 884, 35 ALR2d 612 (1952), including criminal, *State v. Braley*, 224 Or 1, 355 P2d 467 (1968). There are definitely dozens, possibly hundreds, of Oregon appellate decisions that have declined to reach a tendered issue on the ground that it was not raised in the trial court.

There are many rationales for the raise-or-waive rule: that it is a necessary corollary of our adversary system in which issues are framed by the litigants and presented to a court; that fairness to all parties requires a litigant to advance his contentions at a time when there is an opportunity to respond to them factually, if his opponent chooses to; that the rule promotes efficient trial proceedings; that reversing for error not preserved permits the losing side to second-guess its tactical decisions after they do not produce the desired result; and that there is something unseemly about telling a lower court it was wrong when it never was presented with the opportunity to be right. The principal rationale, however, is judicial economy. There are two components to judicial economy: (1) if the losing side can obtain an appellate reversal because of error not objected to, the parties and public are put to the expense of retrial that could have been avoided had an objection been made; and (2) if an issue had been raised in the trial court, it could have been resolved there, and the parties and public would be spared the expense of an appeal.

Admittedly, not all of the rationales for requiring preservation of claimed error are fully applicable to merger issues. However, the needless appeal rationale is fully applicable. Thus, to illustrate, suppose a person were separately charged with transporting and with possessing the same illegal drug at the same time and place, and the jury returned guilty verdicts on

[21]

both counts. If the defendant then raised the merger question in the trial court, it is settled that the counts should be merged and only one conviction entered and one sentence imposed. *State v. Miller*, 14 Or App 396, 513 P2d 508 (1973). If, instead, the defendant were permitted to ignore merger in the trial court and to appeal on the sole ground that the trial court erred in not merging, he would be correct, but the parties and public would assume the expense of an appeal that could have been avoided. In this era when the number of appeals and the cost of appeals are both increasing, the needless-appeal rationale is sufficient reason standing alone to justify general application of a raise-or-waive rule to merger issues.

The specially concurring opinion in *State v. Harris, supra*, arguing for appellate consideration of merger issues not raised below, correctly points out that, when a defendant prevails on a merger issue, retrial is not required; instead, "the remedy is a simple one requiring modification of the judgment and resentencing." 37 Or App at 720. The decisions of the Oregon Supreme Court hold this is insufficient reason to dispense with the general raise-or-waive rule. In *Abbott v. Bob's U-Drive et al*, 222 Or 147, 352 P2d 598, 81 ALR2d 793 (1960), the defendants contended that the trial court erred in entering a joint and several judgment against them. The Supreme Court stated:

> "* * * even though the judgment is cast in the wrong form, the defendants cannot now complain. No objection was made in the trial court to the form of the judgment. An objection to the form of a judgment made for the first time on appeal comes too late. [Citations omitted.] Specifically, the objection that a joint judgment should have been several, or that a several judgment should have been joint, or that a joint and several judgment should have been either, but not both, is waived by failure to make it in the lower court. [Citations omitted.]" 222 Or at 162-63.

*See also Travelers Indemn. v. American Ins.*, 278 Or 193, 199, 563 P2d 684 (1977); *Timmermann v. Timmermann*, 272 Or 613, 635, 538 P2d 1254 (1975). No

[22]

retrial would have been necessary had the Supreme Court considered the merits of the form-of-the-judgment issue in *Abbott.* Nevertheless, the court adhered to the general rule requiring preserving claims of error by raising them in the trial court. We likewise adhere to the raise-or-waive rule as applicable to merger issues.

■   There remains the question of whether to reach the merits of the unpreserved merger issue in this case on the ground that it is egregious error apparent on the face of the record. We decline to do so.

Defendant was sentenced to serve a term not to exceed five years for robbery, five years for theft and four years for unauthorized use. The robbery and theft sentences run concurrently. The unauthorized-use sentence runs consecutively. As noted below, were we to reach the merits, we might well find no merger of the unauthorized- use charge. It is more likely that we would find that the robbery and theft charges merge. Although concurrent sentences are irrelevant when a merger issue is properly raised and preserved, we conclude here that the concurrent sentences on the offenses most likely to merge cuts against a finding that any error committed was egregious.

Had defendant been charged with robbery, *i.e.,* use of force in the course of taking Dixon's automobile, and separately with unauthorized use of Dixon's automobile, the unauthorized-use charge might merge under the reasoning of *State v. Steele,* 33 Or App 491, 577 P2d 524 (1978), *State v. Roach,* 19 Or App 148, 526 P2d 1402 (1974), *aff'd,* 271 Or 764, 534 P2d 508 (1974), and *State v. Webber,* 14 Or App 352, 513 P2d 496 (1973). On the other hand, in a closely analogous situation, we have specifically held that an unauthorized-use charge does not merge. *State v. Dinkel,* 34 Or App 375, 391-92, 579 P2d 245 (1978).

We may have thus created an anamoly. An element of theft is to deprive another of property, which means to:

> "Withhold property of another or cause property of another to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him * * *." ORS 164.005(2)(a).

A person commits the crime of unauthorized use of a vehicle when he "uses another's vehicle * * * without consent of the owner." ORS 164.135(1)(a). Common sense suggests that theft—to intend to permanently deprive another of his automobile—is a more serious matter than to merely use another's automobile without consent, i.e., with no intent to permanently deprive. Yet the possible anamoly is that our cases now suggest that the more serious matter of use of force (robbery) to permanently deprive another of a vehicle (theft) can only be punished as the single crime of robbery; but the less serious matter of a robbery followed by nonconsensual use of the victim's automobile without intent to permanently deprive can be punished as two separate crimes.

■ Nor is it at all clear whether the robbery and theft charges merge in this case. A person cannot be separately convicted and sentenced for robbery based on taking the victim's property and theft based on taking the same property. *State v. Steele, supra.* But the wrinkle in this case is that the robbery charge was based on taking Dixon's money from his wallet, and the theft charge was based on taking the tavern receipts, alleged to be the property of Rowe, the tavern owner. Were we to reach the question, the answer might be found in *State v. Dillman*, 34 Or App 937, 580 P2d 567 (1978). That was a bank robbery case; the defendant had pointed a gun at and obtained money from four different tellers. The question was whether his conduct constituted four separate robberies, or only one. In the course of holding there were four robberies, we stated that "the tellers are considered the 'owners'

of the cash stolen from them and therefore the victims of the property crime aspects of robbery as well." 34 Or App at 941. This reasoning might mean that Dixon should be regarded as the owner of the tavern receipts, which in turn would support the conclusion that the robbery and theft convictions merge. On the other hand, *Dillman* did not necessarily hold that the state is foreclosed from alleging another person's ownership, thereby creating a different victim, which in turn would negate merger under the doctrine of *State v. Gilbert*, 281 Or 101, 574 P2d 313 (1978).

■ We mention some of these considerations not as a ruling on the merits, but only to determine whether any error committed was egregious. Our discussion demonstrates that were we to reach the merits, we would confront close and difficult questions. Generally speaking, close questions are not egregious error to be considered by this court without having been raised in the trial court.

■■ In summary, we conclude that merger issues must be raised in the trial court in order to be preserved for appeal, unless we can affirmatively say in a particular case that an unpreserved merger question amounts to egregious error. And in considering the egregiousness of an alleged merger error, some of the factors to be considered are concurrent versus consecutive sentences and the closeness of the question. Applying that analysis here, we decline to reach the argued merger issue on the grounds that it was not raised in the trial court, and that we cannot say that any error committed was egregious.

Affirmed.