Argued June 21, affirmed in part and reversed
in part August 27, reconsideration denied October 11,
petition for review denied November 27, 1979 (288 Or 141)

# STATE OF OREGON,
### *Respondent,*
### *v.*
# JOSE NASH, aka Anthony Ellis,
### *Appellant.*

## (No. C 78-08-133356, CA 12916)

598 P2d 1297

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Robert C. Cannon, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, Lee, Gillette and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Defendant appeals his convictions for compelling prostitution, ORS 167.017, and promoting prostitution, ORS 167.012, for which he received sentences of ten years and five years, respectively, the sentences to run consecutively. He assigns as error the trial court's denial of his motion to dismiss the indictment, the denial of his motion for judgment of acquittal, and the court's failure to merge the convictions and sentences for compelling prostitution and promoting prostitution. We affirm the conviction and sentence for compelling prostitution and reverse the sentence and conviction for promoting prostitution.

The indictment named the victim, a 15 year old girl, as the person that defendant induced to engage in prostitution. The victim testified that she met defendant in July 1978 in a park in Spokane, Washington. He introduced himself as "Tony." They subsequently met on several occasions, the victim expressing the desire to leave Spokane due to family problems. On Saturday, July 22, 1978, the victim and defendant left Spokane and drove to Portland, Oregon. The victim learned from defendant that he used the names "Tony Ellis" and "Jose Ellis." During this trip, they discussed whether the victim had ever been with a pimp before, prices for various sexual acts, and "how to approach a person" for the act of prostitution. They agreed to split up the proceeds from the victim's prostitution activities. On arriving in Portland, they checked into the Monticello Motel. The next morning, defendant took the victim around the city showing her areas to find customers, and then told her "to go try and find some tricks." Apparently due to the fact that her prices were too high, the victim was unsuccessful in her endeavors and returned to the motel that evening. The next day, the victim went to downtown Portland and approached several potential customers, but was rejected again because of her high prices. When she returned to the motel that evening and told defendant she did not make any money, he hit her and told her to go to Union

Avenue to try to make some money. At about 12:30 a.m., while the victim was walking along Union Avenue, she was stopped by police. Attempting to hide from the police the fact that she was a runaway, the victim gave the officers a false name, which was eventually cleared up. When the officers asked her who her pimp was, she told them his name was "Tony Ellis." Later she told the police defendant's name was "Jose Ellis." She gave the officers a key to the motel room, which she had received from defendant. When she saw defendant later that evening at the police station and was asked if she knew him, she said that she did.

One of the officers who stopped the victim on Union Avenue testified that the location was a high prostitution and high crime area. He also stated that the victim was "walking slowly, looking around not with any particular destination." After receiving the key to the motel room, the officers went to the Monticello Motel, opened the door to Room 3 with the key and entered. They found defendant, who matched the description the victim had given, in the room. Defendant identified himself as "Anthony Ellis," and gave a birthdate which turned out to be false. He stated he had been at the motel for two weeks, and that he did not know the victim. He was arrested and taken to the police station for questioning. The officer also testified that the motel was approximately one and one-half to two miles from the area where the victim was stopped.

The detective who interviewed defendant testified that during the face-to-face confrontation at the police station between defendant and the victim, defendant denied ever having seen the victim.

A friend of the victim's from Spokane testified that she knew defendant only as "Tony." She met defendant in Spokane when he offered the victim and her a ride home in his car. She saw defendant again in Spokane when she carried the victim's suitcase and a shopping bag full of clothes to defendant's car before the victim and defendant left for Portland.

The clerk at the Monticello Motel testified that defendant registered at the motel July 23, 1978, signing the name "James Bob." The clerk stated that when defendant registered he said he was with a friend. He also testified that he saw defendant with a man, but not with a young white girl such as the victim.

Defendant first contends that the indictment was insufficient and should have been dismissed upon his motion. The state correctly points out that defendant's motion to dismiss the indictment was not timely made under ORS 135.520.[1] We will affirm a trial court's ruling if correct regardless of the basis upon which the trial court ruled. *Helmer v. Transamerica Title Ins. Co.,* 279 Or 457, 569 P2d 10 (1977).

Defendant next contends that there was insufficient evidence produced at trial to corroborate the victim's testimony and, therefore, we should reverse the conviction. ORS 167.022.[2]

In *State v. Patrick,* 17 Or App 291, 521 P2d 1311, *rev den* (1974), the court held that the corroboration requirement of ORS 167.022 is satisfied

> "if there is any corroborative evidence which fairly and legitimately tends to connect the defendant with the commission of the crime. It is not necesssary that the corroborative evidence be adequate, in itself, to support a conviction." 17 Or App at 294.

---

[1] ORS 135.520 provides:

"A motion to set aside the indictment or dismiss the accusatory instrument shall be made and heard at the time of the arraignment or within 10 days thereafter, unless for good cause the court allows additional time. If not so made, the defendant is precluded from afterwards taking the objections to the indictment or accusatory instrument."

[2] At the time of the trial, ORS 167.022 provided:

"A person shall not be convicted under ORS 167.012 or 167.017 solely on the uncorroborated testimony of the person whose prostitution he is alleged to have promoted or compelled."

This statute was repealed by Oregon Laws 1979, ch 248, § 1.

*See State v. Montgomery,* 26 Or App 817, 554 P2d 578 (1976).

The testimony of the victim's friend from Spokane that she was together with the victim and defendant in Spokane and carried the victim's bags to defendant's car corroborated the victim's testimony that she met defendant in Spokane and accompanied him to Portland. The victim's possession of the key to defendant's motel room and the presence of her clothing and luggage there also corroborated parts of her testimony as to her connection with defendant.

There was evidence from which a jury could find that defendant made false statements to police with respect to his identity, his age, the duration of his stay in Portland, and his acquaintance with the victim. Although false statements would not themselves be sufficient to support a finding that defendant is guilty of the crimes charged, they may serve to corroborate the victim's testimony as to defendant's guilt. *See Howard v. Sloan,* 264 Or 247, 504 P2d 735 (1972); *State v. Carroll,* 251 Or 197, 444 P2d 1006 (1968). We conclude that the trial court did not err in denying defenant's motion for a judgment of acquittal.

Finally, defendant argues that the trial court erred in failing to merge the convictions and sentences for compelling prostitution and promoting prostitution. In *State v. Williams,* 40 Or App 227, 594 P2d 1281 (1979), we held that where the same evidence was used to prove both compelling prostitution and promoting prostitution, the defendant could not be separately convicted and sentenced for both crimes. Rather, the charge of promoting prostitution, a class C felony, should "merge" with the charge of compelling prostitution, a class B felony. Here, as in *State v. Williams,* the compelling prostitution charge could not be sustained without the inferences derived from the evidence proving the charge of promoting prostitution. Therefore, the same result should obtain here as in *State v. Williams.* We discern nothing in *State v. Cloutier,* 286

[794]

Or 579, 596 P2d 1278 (1979) that requires a different result.[3]

We reverse the conviction and sentence for promoting prostitution.

Affirmed in part, reversed in part.

**GILLETTE, J.,** concurring in part and dissenting in part.

I concur in all of the majority's opinion save the portion concerning merger. Defendant did not raise the merger question at trial, and I would hold that he waived it now. *See State v. Applegate,* 39 Or App 17, 591 P2d 371, (1979).

The majority acknowledges the principle of *Applegate* but explains, by way of footnote,

"* * * Among the factors weighing toward consideration of the issue [of merger, in spite of defendant's failure to raise it below,] are the novelty of the issue and whether the trial court meted out consecutive rather than concurrent sentences." 41 Or App 795, n 3, 598 P2d 1300, n 3

If the reasons cited by the majority are merely "among" several, I fail to perceive any others. Moreover, the two cited reasons are illusory or worse:

1. "Novelty of issue." While the case actually deciding the specific issue raised here—*State v. Williams,* 40 Or App 227, 594 P2d 1281 (1979)—was not

---

[3] The state argues that under *State v. Applegate,* 39 Or App 17, 591 P2d 371, *rev pending* (1979), since defendant did not raise the issue in the trial court he has waived consideration of this assignment of error. In *State v. Applegate* we held that merger issues not raised at trial will not be considered on appeal unless any error was egregious. Among the factors weighing toward consideration of the issue are the novelty of the issue and whether the trial court meted out consecutive rather than concurrent sentences.

Here, defendant received consecutive sentences. Although in light of *State v. Williams,* which was decided subsequent to the trial, the merger issue here is relatively settled. At the time of the trial it raised a problem not previously analyzed in Oregon case law. Under the circumstances of this case we reach defendant's merger contentions.

decided until after the trial of this case, the general issue of "merger" has been a *cause celebre* in this court for several years. To call any merger issue "novel" in Oregon criminal law today is to ignore the past.

2. "Consecutive sentences." I would not let consecutive sentencing serve as a basis for labeling this alleged error as "egregious." When we do so, we engage in a weighing process I find impossible. Would we, for instance, reach the alleged error here had the trial court entered two *consecutive two-year sentences,* but not reach it where the court entered two *concurrent five-year sentences?* The question answers itself.

I respectfully dissent.