MADDOX, Justice
(concurring in part; dissenting in part)
I am pleased with the decision of the Court in this case insofar as it holds that a trial court’s failure to advise a defendant correctly about the maximum and minimum punishment a defendant can receive is not a jurisdictional defect, because the law was very confusing on this point. I am greatly disturbed about the holding that a defendant, represented by1 counsel, who pleads guilty and is sentenced within the range allowed by law, and who does not object to the stated range of punishment or ask the trial court to allow a withdrawal of the plea of guilty, or does not appeal from the judgment of conviction entered on the plea of guilty, may still raise the issue of the voluntariness of the *1030 plea of guilty in a post-conviction proceeding.[4]
The majority states the question presented as follows:
“If the trial judge fails to strictly comply with the procedural requirements for the entry of a guilty plea, must the defendant seek to withdraw the plea of guilty and give the trial judge an opportunity to pass on any claimed error in the process and thereby establish in the record the error in question in the event of an appeal, or can the defendant raise the question in a timely filed post-conviction proceeding?”
660 So.2d at 1026. (Emphasis added.) The majority concludes:
“We hold that even though a defendant could file a motion under the provisions of Rule 14 [Ala.R.Crim.P.] to withdraw a plea of guilty and could appeal a trial court’s ruling on that motion, the defendant would not be precluded from raising, in a timely filed post-conviction proceeding, the question of the voluntariness of the guilty plea.”
660 So.2d at 1029. The Court bases this holding, as I understand it, primarily upon what it believes the Supreme Court of the United States required by its decision in a case from Alabama, Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). I recognize that Boykin imposed certain requirements on the State, in order to ensure that a defendant’s plea of guilty is voluntarily entered, but Boykin was a capital case, and even in Boykin, the constitutional question of the voluntariness of the defe-dant’s plea, which was addressed by the Supreme Court of the United States, was raised for the defendant by three members of this Court, who dissented in that case. See, Boykin v. State, 281 Ala. 659, 663, 207 So.2d 412, 415 (1968). The point is that the issue of the voluntariness of Boykin’s plea was raised by three members of this Court, and the issue was then addressed by the Supreme Court of the United States, resulting in the now famous Boykin decision. In Boykin, the question whether the constitutional question was properly raised was discussed by the Supreme Court of the United States, and there was sharp disagreement on the Court as to the preclusion issue. See Boykin, 395 U.S. at 240, 89 S.Ct. at 1711, where the majority stated that “[tjrial strategy may make a plea of guilty seem the desirable course.” But then the majority noted that the law of Alabama requires a jury to make a finding of guilty in a capital case and noted that “four of the seven justices [of the Alabama Supreme Court] discussed the constitutionality of the process by which the trial judge had accepted petitioner’s guilty plea.”[5] It seems clear to me that members of the Supreme Court of Alabama first raised the issue of the voluntariness of Boykin’s plea, under the “plain error” rule, which meant the issue was preserved sufficiently for review by the Supreme Court of the United States on appeal, and it further seems clear to me that there is the suggestion, in Boykin, that the constitutional question may not have been reached by the Supreme Court of the United States had members of this Court not raised and addressed it, because Boykin himself did not preserve it, but it was preserved for him by “four of the seven justices” of this Court.
In Boykin, Justices Harlan and Black were of the opinion that the constitutional question had not been properly raised. In his dissent, Justice Harlan wrote, “The Court today holds that petitioner Boykin was denied due process of law, and that his robbery conviction must be reversed outright, solely be *1031 cause ‘the record [is] inadequate to show that petitioner ... intelligently and knowingly pleaded guilty,’ ” and “thus in effect fastens upon the States, as a matter of federal constitutional law, the rigid prophylactic requirements of Rule 11 of the Federal Rules of Criminal Procedure,” and “does so in circumstances where the Court itself has only very recently held application of Rule 11 to be unnecessary in the federal courts. See Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969).” 395 U.S. at 244-45, 89 S.Ct. at 1713-14. Justice Harlan then said: “Moreover, the Court does all this at the behest of a petitioner who has never at any time alleged that his guilty plea was involuntary or made without knowledge of the consequences. I cannot possibly subscribe to so bizarre a result.” 395 U.S. at 245, 89 S.Ct. at 1713.
I do not believe Boykin stands for the proposition that a defendant who has been afforded counsel, who decides to plead guilty, and who is sentenced within the limits allowed by law, should be able to raise, in a post-conviction proceeding, the question of the plea’s voluntariness, especially when the defendant could have raised the issue 1) by objecting, when he entered the plea; 2) by asking the trial judge to allow a withdrawal of the plea of guilty, and then appealing from the conviction.
The term “due process” discussed in Boy-kin means “fundamental fairness.” Every defendant is guaranteed this “fundamental fairness,” but the Alabama Rules of Criminal Procedure provide “due process,” because a defendant is entitled to counsel whether or not the defendant can afford counsel, and the defendant can ask the trial judge to withdraw a plea of guilty, and the defendant can appeal from a judgment based on a plea of guilty. Our Rules of Criminal Procedure governing the entry of pleas of guilty do provide certain procedural requirements that must be followed, but our Rules also provide that certain issues that are not properly raised are precluded, as they should be.[6]
Rule 1.2, Ala.R.Crim.P., states, “These rules are intended to provide for the just and speedy determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unnecessary delay and expense, and to protect the rights of the individual while preserving the public welfare.”
Other courts, construing similar rules of procedure for reviewing the voluntariness of a guilty plea, have reached a result similar to the one that I believe should apply here. A Florida court has written:
“ ‘[T]he purposes of requiring a motion to withdraw the guilty plea as a prerequisite to an appeal are obvious. This procedure enables the trial judge to pass on any points raised and establishes a record on which an appellate court may base an informed and reasoned disposition of the appeal. Were it not for this record of the motion hearing, the only evidence of volun-tariness in the vast majority of appeals would be the colloquy between the trial judge and the defendant. In most instances, therefore, the appellate court would not have a sufficient basis to render an informed decision on the issue of voluntariness. By requiring the defendant to make a prior motion to withdraw, however, the question of voluntariness will first be put to the trial court which can conduct an evidentiary hearing, and, if necessary, entertain collateral evidence in support of the defendant’s position. If a trial court rules against the defendant on the motion to withdraw, that decision may be challenged upon appeal from the judgment and sentence.’ ”
Gamble v. State, 449 So.2d 319, 321 (Fla.Dist.Ct.App.1984).
The Oregon Court of Appeals has stated additional reasons for holding that an error not raised and preserved at the trial level cannot be considered on appeal:
“[I]t is a necessary corollary of our adversary system in which issues are framed by the litigants and presented to a court; ... *1032 fairness to all parties requires a litigant to advance his contentions at a time when there is an opportunity to respond to them factually, if his opponent chooses to; ... the rule promotes efficient trial proceedings; ... reversing for error not preserved permits the losing side to second-guess its tactical decisions after they do not produce the desired result; and ... there is something unseemly about telling a lower court it was wrong when it never was presented with the opportunity to be right. The principal rationale, however, is judicial economy. There are two components to judicial economy: (1) if the losing side can obtain an appellate reversal because of error not objected to, the parties and public are put to the expense of retrial that could have been avoided had an objection been made; and (2) if an issue had been raised in the trial court, it could have been resolved there, and the parties and public would be spared the expense of an appeal.”
State v. Applegate, 39 Or.App. 17, 21, 591 P.2d 371, 373 (1979).
I believe that the effects of this decision will be far-reaching, in that it allows defendants to raise, in a post-conviction proceeding, the question whether a plea of guilty was voluntary, when the defendant, represented by counsel, had an opportunity: 1) to object to the procedure used by the trial judge in taking the plea; 2) to ask the trial judge to allow a withdrawal of the plea; or 3) to appeal.
The proper rule and the one that this Court should adopt would require a defendant, or the defendant’s counsel, to ask the trial judge to permit the defendant to withdraw the plea of guilty, to object to the stated range of punishment at the time the trial court erroneously states the range, or to otherwise timely raise the issue in the trial court, so that the trial court, at that time, could have an opportunity to resolve the issue.
I do not believe that the “due process” rights of this defendant have been violated, and I think the Court, citing Boykin, has improperly interpreted the holding in Boy-kin, and, unfortunately, has adopted a rule that does not “presence] the public welfare.” Rule 1.2, Ala.R.Crim.P.
APPENDIX
SUPREME COURT OF ALABAMA
OCTOBER TERM, 1993-94
1920426
Ex parte State of Alabama
PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS
(Re: Ignacio Cantu v. State)
(Morgan Circuit Court, CC-89-93; Court of Criminal Appeals, CR-91-726)

On Application for Rehearing

MADDOX, Justice.
The opinion of October 15, 1993, is withdrawn and the following opinion is substituted therefor.
This Court granted the State’s petition for a writ of certiorari, to review the question whether a criminal defendant is precluded from raising, in a post-conviction proceeding, a defect in the Boykin colloquy,[7] specifically, the failure of the trial judge to properly advise the defendant of the maximum sentence he could receive if he entered a plea of guilty. See, Rule 14.4(a)(1), Ala.R.Crim.P. Stated differently, the question is: If the trial judge fails to strictly comply with the procedural requirements for the entry of a guilty plea, must the defendant seek to withdraw the plea of guilty and give the trial judge an opportunity to pass on any claimed error in the process and thereby establish in the record the error in question in the event of an appeal, or can the defendant raise the question in a timely filed post-conviction proceeding?
The facts necessary to a resolution of this question are sufficiently set out in Judge *1033 Patterson’s opinion for the Court of Criminal Appeals, Cantu v. State, 660 So.2d 1024 (Ala.Crim.App.1992), but we set forth some of the basic facts here also. Ignacio Cantu pleaded guilty to trafficking in cocaine, a violation of § 13A-12-231(2)(e), Ala.Code 1975, and was sentenced to 25 years’ imprisonment and fined $250,000. Cantu did not appeal, but he later filed a petition seeking post-conviction relief pursuant to Rule 32, Ala.R.Crim.P. In his petition, Cantu alleged that his guilty plea had not been made voluntarily with an understanding of the consequences of his plea; that the circuit court had been without jurisdiction to render a judgment against him or to impose a sentence; and that he had been denied effective assistance of counsel.
Cantu alleged that he had pleaded guilty only after he had been advised by his counsel that the maximum sentence that could be imposed against him was life imprisonment without parole; however, the actual maximum sentence that the trial court could have imposed was 99 years or life imprisonment. The State moved to dismiss, arguing that Cantu was precluded from pursuing his claims because, it argued, they should have been raised on direct appeal. The circuit court apparently agreed; it dismissed Cantu’s Rule 32 petition. Cantu appealed.
On appeal, the Court of Criminal Appeals, by opinion, remanded the cause and allowed Cantu to amend his petition, pursuant to Rule 32.6(a), Ala.R.Crim.P., and ordered an adjudication on the merits on Cantu’s claim of ineffective assistance of counsel. Cantu v. State, 587 So.2d 1287 (Ala.Crim.App.1991). Cantu then amended his Rule 32 petition and, after a hearing thereon, the circuit court denied the petition. Cantu again appealed; the Court of Criminal Appeals reversed, stating, “Because Cantu was misinformed of the applicable maximum sentence, this cause must be remanded to the circuit court with the order that Cantu’s conviction be ‘reversed,’ in accordance with Ex parte Rivers, 597 So.2d 1308 (Ala.1991).” Cantu v. State, 660 So.2d 1024, 1025 (Ala.Crim.App.1992). The State’s application for rehearing was overruled, and the State petitioned for certio-rari review.
In Parish v. State, 660 So.2d 227 (Ala.Crim.App.1993), the Court of Criminal Appeals referred frequently to Ex parte Rivers, 597 So.2d 1308 (Ala.1991), and stated that this Court in Rivers had established what appeared to be a new rule that was “a departure from case law.” 660 So.2d at 229-30. Judge Patterson observed specifically in Parish:
“However, the Alabama Supreme Court in Ex parte Rivers, 597 So.2d 1308 (Ala.1991), in effect, announced a different rule regarding preservation of the issue of whether the appellant had been properly advised of the applicable sentence range before pleading guilty. In that case, the appellant, contesting the validity of his guilty pleas in an A.R.Cr.P.Temp. 20 petition, alleged, in part, that ‘he [had not been] properly informed of the maximum and minimum sentences so as to allow his plea to be knowingly and voluntarily given,’ id. at 1309. In an unpublished memorandum, we had held that our review of this issue was procedurally barred. 586 So.2d 307. After reiterating that ‘a defendant must be informed of the maximum and minimum possible sentences as an absolute constitutional prerequisite to the acceptance of a guilty plea,’ 597 So.2d at 1309, the Rivers court characterized the remaining issue as follows: ‘The State contends, and the Court of Criminal Appeals agreed, that Rivers failed to preserve the issue of ... the illegality of his sentencing for appeal by failing to raise it at trial,’ id. at 1310 [emphasis added in Parish ]. The court, in disagreeing with our holding, relied on the following language in Ex parte Brannon, 547 So.2d 68, 68 (Ala.1989):
“ ‘[W]hen a sentence is clearly illegal or is clearly not authorized by statute, the defendant does not need to object at the trial level in order to preserve that issue for appellate review. See Bartone v. United States, 375 U.S. 52, 84 S.Ct. 21, 11 L.Ed.2d 11 ... (1963). Indeed, the illegality of a defendant’s sentence is a ground specified in Rule 20, Ala.R.Crim.P. [Temp.], for a collateral post-conviction remedy.’
“Finding that the issue was not precluded, the court remanded the ease with the in *1034 struction that Rivers’s convictions be reversed, holding that ‘[b]eeause Rivers was not informed of the minimum possible sentence in his cases, prior to his plea of guilty, his guilty plea was not knowingly, voluntarily, and intelligently given,’ 597 So.2d at 1310.
“Apparently, the Rivers court considered that the trial court’s failure to correctly advise Rivers of the minimum possible sentences resulted in the trial court’s lack of jurisdiction. This appears to be a departure from case law. As far as we are aware, a lack of information or misinformation about the sentencing consequences of pleading guilty has always been treated in the context of the voluntariness of the plea — not in the context of jurisdiction. See, e.g., Carter v. State, 291 Ala. 83, 84, 277 So.2d 896, 897 (1973) (court stated that ‘[o]ur inquiry focuses upon whether the appellant’s guilty plea was “intelligent and voluntary,” as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 ... (1969) [, where the ajppel-lant argues that he was not advised on the record what the minimum and maximum punishments for his offense would be’).”
660 So.2d at 229-30 (emphasis added in Parish).
In its opinion in this ease, the Court of Criminal Appeals analyzed some of the case law relating to the preservation of claimed error in matters relating to pleas of guilty and, citing its later-withdrawn opinion in Parish v. State, stated that it is “uncertain as to how and to what circumstances the Rivers rule should be applied,” 660 So.2d at 1025, but concluded that “because Cantu was not correctly informed of the maximum sentence, his sentence is void, and, in accordance with Rivers, 597 So.2d at 1310, his conviction must be reversed and the cause remanded for further proceedings.”[8] 660 So.2d at 1025.
We agree with the State’s argument that the case law is conflicting as to when and under what circumstances a defendant is precluded from raising, on appeal, or in a post-conviction proceeding when there was no appeal, as here, a failure of the trial judge to follow the procedural requirements for the entry of a plea of guilty.[9]
The confusion over the proper interpretation of the Rivers holding is addressed in Gordon v. Nagle, 647 So.2d 91 (Ala.1994), wherein this Court, in answering a certified question from the United States Circuit Court for the Eleventh Circuit, stated that the confusion relating to when and under what circumstances a defendant could be precluded from raising a question about the voluntariness of a guilty plea was caused by a misinterpretation of the original holding in Rivers. In Gordon v. Nagle, this Court, after noting the confusion that did exist, opined:
“The confusion in Alabama law is the result of contradictory holdings by the Court of Criminal Appeals in Sampson [v. State, 605 So.2d 846 (Ala.Crim.App.1992) ], and Mosley [v. State, 616 So.2d 362 (Ala.Crim.App.1993)], and that court’s interpretation of our decision in Ex parte Riv *1035 ers [597 So.2d 1308 (Ala.1991) ]. The Court of Criminal Appeals has read Ex parte Rivers as holding that any defect in the entry of a plea of guilty is always a matter of jurisdiction. Ex parte Rivers held that the failure to inform a defendant of the minimum and maximum sentences constituted a defect in an entry of a plea of guilty that went to the voluntariness of that plea and, therefore, was subject to collateral challenge under Boykin v. Alabama, [395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) ]. The collateral challenge in Ex parte Rivers to the plea of guilty was made within the two-year period of limitations.”
Boykin, of course, established the procedural due process requirements that must be met before a guilty plea can be considered to have been voluntarily and intelligently entered. These procedural requirements have been incorporated in the Alabama Rules of Criminal Procedure; see Rule 2.2(e) and Rule 14.4. Rule 14.4(e) specifically provides for the withdrawal of a plea of guilty, and, under Rule 2.2(e)(5), the defendant can appeal from a judgment entered on a plea of guilty.[10] Cantu did not appeal, but elected to use a post-conviction proceeding to attack the failure of the trial judge to advise him of the maximum sentence he could receive. Because Cantu’s petition under Rule 32 was brought within the two-year limitations period of Rule 32.2(c), Ala.R.Crim.P., we agree with the Court of Criminal Appeals that it was not precluded.
In reaching the result we do, we have construed the provisions of Rules 2 and 14, Ala.R.Crim.P., that set out the requirements for the entry of a plea of guilty and for the withdrawal of such a plea, and the right to appeal from a conviction on a plea of guilty;[11] we have construed them in accordance with the provisions of Rule 1.2, Ala.R.Crim.P., which states: “These rules are intended to provide for the just and speedy determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unnecessary delay and expense, and to protect the rights of the individual while preserving the public welfare.”
We are aware that some courts, construing similar rules of procedure for reviewing the voluntariness of a guilty plea, have reached a result contrary to the one we reach on this application for rehearing.[12]
*1036 Notwithstanding the contrary, we hold that even though a defendant could file a motion under the provisions of Rule 14 to withdraw a plea of guilty on the ground that it was not entered in compliance with the provisions of Rules 2, and could appeal a trial court’s ruling on that motion, the defendant would not be precluded from raising, in a timely filed post-conviction proceeding, the question of the voluntariness of the guilty plea. That was the holding in Rivers, and the only holding in Rivers. Gordon v. Nagle, supra.
To the extent that any decision of this Court or of the Court of Criminal Appeals interprets Ex parte Rivers differently, it is hereby overruled.
The judgment of the Court of Criminal Appeals ordering the trial court to set aside the judgment of conviction is due to be, and it is hereby, affirmed.
APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AEFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON, STEAGALL, INGRAM and COOK, JJ., concur.

. On application for rehearing, the majority modifies the opinion that I authored and that was released on April 15, 1994. The reporter of decisions advises me that the April 15, 1994, opinion has been cited in some opinions of the Court of Criminal Appeals. Because the April 15, 1994, opinion has been modified, and because I now agree with the State's position on the preclusion issue that it raised in its application for rehearing, I believe that it would be very desirable to make the full text of the April 15, 1994, opinion available to the reader; therefore. I am attaching a copy of it to this opinion for informational purposes.

. The Supreme Court's reference to "four of the seven justices” must refer to Justice Goodwyn, who dissented in Boykin v. State, Chief Justice Livingston, and Justice Harwood, who joined the dissent, and Justice Lawson, who concurred specially in Boykin v. State, and who wrote that the voluntariness of a plea of guilty could be raised in a post-conviction proceeding.

. Rules 32.2(a)(3) and (a)(5) expressly bar review of claims that could have been raised in the trial court or argued on appeal, but were not.

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

. The Court of Criminal Appeals wrote in this case:
"Although we have declared in Parish v. State, [Ms. CR-90-1285, 660 So.2d 227 Ala.Crim.App.1993] that we are uncertain as to how and to what circumstances the Rivers rule should be applied, we consider that, until we receive any contraiy indication from the Alabama Supreme Court, the Rivers rule applies where the defendant has received incorrect sentencing information, as Cantu did."
660 So.2d at 1025. The September 30, 1992, Parish opinion cited was withdrawn by the Court of Criminal Appeals on April 23, 1993, and a new opinion was substituted on that date. The Court of Criminal Appeals’ had concluded its September 30, 1992, opinion in Parish with this statement: "Because we frequently review guilty-plea convictions both on direct appeal and on collateral review, we welcome any clarification from the Alabama Supreme Court.” This Court, on August 10, 1993, granted the State's petition to review the April 23, 1993, Parish decision.

. In its petition here, the State alleges:
"[T]he decision is in conflict because there is a line of cases that state that sentencing is jurisdictional and there is another line of cases that hold that alleged errors in sentencing are subject to the contemporaneous objection rule and are not preserved for review where no objection thereto is made at the trial level.”
The State also points out that the Court of Criminal Appeals in Parish v. State, 660 So.2d 227 (Ala.Crim.App.1993), analyzes several of these conflicting cases.

. See, H. Maddox, Alabama Rules of Criminal Procedure, § 2.2(e), at 73 (1990).

. Rule 2.2(e)(5), Ala.R.Crim.P., specifically provides that a defendant may appeal "from the action of the court” after it accepts a guilty plea.

. A Florida court has written:
" '[T]he purposes of requiring a motion to withdraw the guilty plea as a prerequisite to an appeal are obvious. This procedure enables the trial judge to pass on any points raised and establishes a record on which an appellate court may base an informed and reasoned disposition of the appeal. Were it not for this record of the motion hearing, the only evidence of voluntariness in the vast majority of appeals would be the colloquy between the trial judge and the defendant. In most instances, therefore, the appellate court would not have a sufficient basis to render an informed decision on the issue of voluntariness. By requiring the defendant to make a prior motion to withdraw, however, the question of voluntariness will first be put to the trial court which can conduct an evidentiary hearing, and, if necessary, entertain collateral evidence in support of the defendant's position. If a trial court rules against the defendant on the motion to withdraw, that decision may be challenged upon appeal from the judgment and sentence.’ ”
Gamble v. State, 449 So.2d 319, 321 (Fla.Dist.Ct.App.1984).
The Oregon Court of Appeals has stated additional reasons for holding that an error not raised and preserved at the trial level cannot be considered on appeal:
"[I]t is a necessary corollary of our adversary system in which issues are framed by the litigants and presented to a court; ... fairness to all parties requires a litigant to advance his contentions at a time when there is an opportunity to respond to them factually, if his opponent chooses to; ... the rule promotes efficient trial proceedings; ... reversing for error not preserved permits the losing side to second-guess its tactical decisions after they do not produce the desired result; and ... there is something unseemly about telling a lower court it was wrong when it never was presented with the opportunity to be right. The principal rationale, however, is judicial economy. There are two components to judicial economy: (1) if the losing side can obtain an appellate reversal because of error not objected to, the parties and public are put to the expense of *1036 retrial that could have been avoided had an objection been made; and (2) if an issue had been raised in the trial court, it could have been resolved there, and the parties and public would be spared the expense of an appeal.”
State v. Applegate, 39 Or.app. 17, 21, 591 P.2d 371, 373 (1979).